**Delbert Lee BURKETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–02–01133–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 2, 2003.

Alan Charles Myrtle, Houston, TX, for Appellant.

Shirley Cornelius, Assistant District Attorney—Harris County, Charles A. Rosenthal, Jr., District Attorney—Harris County, Houston, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and HANKS.

## OPINION

TERRY JENNINGS, Justice.

A jury found appellant, Delbert Lee Burkett, guilty of indecent exposure and assessed punishment at confinement for 74 days. In his sole point of error, appellant contends that the trial court erred in admitting pretrial and in-court identification evidence against him in violation of his constitutional rights to due process.[1] We affirm.

### Facts and Procedural Background

Ellen West, the complainant, testified that on April 28, 2002, at about 11:40 a.m., she was in the parking lot of a grocery store. As she was putting groceries into her car, she heard a man say something to her. When she turned around to look, she saw appellant seated in the driver's side of a gray Cadillac parked next to her car. Although appellant was wearing a hat, she saw that he was naked and masturbating. The complainant saw appellant's genitals and looked at appellant for 15 to 20 seconds, "paying a lot of attention to his face" and noticing that appellant had "distinctive" eyes. She memorized appellant's license plate number and several bumper stickers on the back of his car. The complainant drove home and reported the incident to the Harris County Constables Office, Precinct 4.

Harris County Deputy Constable B. Pantoja testified that, 11 days after the incident, he showed the complainant a photographic array containing a photograph of appellant and photographs of five other men. Pantoja saw the complainant identify appellant in "under a minute" as the

---

1. U.S. Const. amend. XIV; Tex. Const. art. I, § 19.

man that she saw masturbating in the gray Cadillac on April 28, 2002. Pantoja then told the complainant that she had "a good memory."

Appellant filed a motion to suppress the complainant's pretrial and in-court identifications of him as the perpetrator of the offense. In the pretrial suppression hearing, the complainant testified that she described the perpetrator to the Constable's office as a white male between 45–50 years of age, approximately six feet tall, with dark frizzy hair and a mustache. She stated that Deputy Constable Pantoja told her that he had identified a suspect in the case and that the suspect was in one of the six photographs in the array. She then "looked at all the pictures and picked him out straightaway." The trial court denied appellant's motion and admitted all of the above testimony at trial.

### Identification

Appellant argues that the trial court erred in "admitting into evidence a pretrial identification that was conducted in an overly suggestive procedure" and an "in-court identification" that was "tainted" by the pretrial identification.

■ The standard of review on a claim that an in-court identification should not have been admitted due to the taint of an impermissibly suggestive pretrial identification procedure is set forth in *Loserth v. State*, 963 S.W.2d 770 (Tex.Crim.App. 1998). Our standard of review depends upon the type of question presented to the reviewing court. *Id.* at 772. First, as a general rule, we must give almost total deference to a trial court's determination of historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of the credibility and demeanor of the witnesses. *Id.* Second, we give the same amount of deference to the trial court's rulings on

"application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Id.* Finally, we review de novo "mixed questions of law and fact" that do not fall within the second category. *Id.* In this case, the question of whether an identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification is a mixed question of law and fact that does not turn on an evaluation of credibility and demeanor. *Id.* at 772–73. Accordingly, we apply a de novo standard of review.

■ A pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Barley v. State*, 906 S.W.2d 27, 32–33 (Tex.Crim.App.1995). We apply a two-step analysis to determine the admissibility of an in-court identification and ask (1) whether the pretrial identification procedure was impermissibly suggestive and, if so, (2) whether the improperly suggestive procedure created a very substantial likelihood of irreparable misidentification. *Simmons*, 390 U.S. at 384, 88 S.Ct. at 971; *Barley*, 906 S.W.2d at 33. A defendant bears the burden of establishing by clear and convincing evidence that the pretrial identification procedure was impermissibly suggestive. *Barley*, 906 S.W.2d at 33–34. Furthermore, the analysis requires an examination of the totality of the circumstances surrounding the identification. *Id.* at 33.

■ If a court finds that a pretrial identification procedure was impermissibly suggestive, it must then consider the factors enumerated in *Neil v. Biggers* to de-

termine whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). These non-exclusive factors are: (1) the witness's opportunity to view the criminal, (2) the witness's degree of attention, (3) the accuracy of the witness's description of the suspect, (4) the level of certainty at the time of confrontation, and (5) the time between the crime and confrontation. *Id.* We treat these five factors as issues of fact and review them in the light most favorable to the trial court's ruling. *Ibarra v. State,* 11 S.W.3d 189, 195–96 (Tex.Crim.App.1999). The five factors, viewed in this light, are then reviewed de novo against "the corrupting effect" of the suggestive pretrial identification procedure. *Id.; Loserth,* 963 S.W.2d at 773–74.

### Impermissibly Suggestive Procedure

Appellant asserts that the photographic array was impermissibly suggestive because he was the only one pictured in the array who resembled the description given by the complainant to the Constable's office. Appellant argues that the pretrial identification procedure was the equivalent of showing the complainant only one photograph, which Texas courts have found to be impermissibly suggestive. *See Delk v. State,* 855 S.W.2d 700, 707 (Tex.Crim.App. 1993). Appellant also complains that Deputy Constable Pantoja told the complainant that a suspect was included in the photographic array and, after she identified appellant, that she had "a good memory."

Suggestiveness may be created by the manner in which a pretrial identification procedure is conducted. *Barley,* 906 S.W.2d at 33. For example, a police officer may point out the suspect or suggest that a suspect is included in a lineup or photographic array. *Id.* Also, the content of a lineup or photographic array itself may be suggestive if the suspect is the only individual who closely resembles the description given by the witness. *Id.* Furthermore, an individual procedure may be suggestive or the cumulative effect of procedures may be suggestive. *Id.*

In regard to the content of the photographic array, all of the men pictured in the array are caucasian, have mustaches, are wearing civilian clothes, and appear to be similar in age. One man in the array appears to have light brown or blonde hair, while the other men, including appellant, have dark hair. Although every photographic array must contain photographs of individuals who fit the rough description of the suspect, it is not essential that all individuals be identical in appearance. *Buxton v. State,* 699 S.W.2d 212, 216 (Tex. Crim.App.1985). Neither due process of law nor common sense requires such exactitude. *Giesberg v. State,* 945 S.W.2d 120, 125–26 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd). Accordingly, we hold that the content of the photographic array was not impermissibly suggestive.

Nor do we find that the manner in which the pretrial identification procedure was conducted was impermissibly suggestive in regard to the complainant's pretrial identification. It is true that Deputy Constable Pantoja told the complainant that he had identified a suspect and that the suspect was one of the six men pictured in the photographic array. It is also true that, after the complainant identified appellant in the photographic array, Pantoja told her that she had "a good memory." However, neither of these facts are dispositive in this case. Pantoja's disclosure that a suspect was included in the photographic array did not itself render the pretrial identification impermissibly suggestive because a complaining witness

normally assumes that a photographic array includes a suspect. *See Johnson v. State*, 901 S.W.2d 525, 534 (Tex.App.-El Paso 1995, pet. ref'd). Additionally, Pantoja's comment that the complainant had "a good memory" did not render the pretrial identification impermissibly suggestive because the complainant had already identified appellant before Pantoja made the statement. We recognize that, in some situations, a police officer's comment that a witness has "a good memory" following an identification may render that identification impermissibly suggestive. Here, however, the record reveals that the complainant identified appellant in the photographic array "straightaway." Her identification was immediate and without hesitation. Appellant has not demonstrated, by clear and convincing evidence, that the manner in which the pretrial identification procedure was conducted was impermissibly suggestive as to the complainant's pretrial identification. Accordingly, we hold that the trial court did not err in admitting into evidence the complainant's pretrial identification of appellant as the perpetrator of the offense.

While there is not clear and convincing evidence that Deputy Constable Pantoja's comment affected the complainant's pretrial identification of appellant, we recognize that such a comment could possibly influence a subsequent in-court identification. Accordingly, we now examine, under the totality of the circumstances, whether Pantoja's comment that the complainant had "a good memory" was so suggestive that it gave rise to a very substantial likelihood of irreparable in-court misidentification.

### Likelihood of Irreparable In–Court Misidentification

In analyzing the issue of irreparable misidentification, we look to the five *Biggers* factors for guidance. We consider the factors as issues of fact and review them in a light favorable to the trial court's ruling. *Loserth*, 963 S.W.2d at 773. Reliability is the "linchpin" in determining admissibility of such identification testimony. *Barley*, 906 S.W.2d at 34. If sufficient indicia of reliability outweigh suggestiveness, then an identification is admissible. *Id.* A defendant must show by clear and convincing evidence that the identification has been irreparably tainted. *Id.*

Applying the *Biggers* factors, we note that, first, the complainant had an adequate opportunity to view the perpetrator at the time of the offense. The record reveals that the complainant had a clear view of the perpetrator in a car parked "right next" to her car, and "the lighting [at 11:40 a.m.] was good." The complainant testified that she "got a good look at [appellant]" for about 15 to 20 seconds.

Second, the complainant testified that she "paid a lot of attention to [the perpetrator's] face." The record further demonstrates the complainant's attentiveness as evidenced by her ability to describe the perpetrator and his car and to memorize the car's license plate number and certain bumper stickers on the back of the car. The complainant also testified that the perpetrator was "distinctive" to her "because of his eyes."

Third, the record reveals that, before the complainant viewed the photographic array, she described the perpetrator in detail as a white male, approximately six feet in height, with dark frizzy hair and a mustache, and being approximately 45–50 years of age. However, appellant notes that during the identification suppression hearing, he removed his shirt and revealed that he has extensive tattoos on his arms and chest. He also revealed that he is missing several front teeth. Appellant argues that such a "jarring contrast" be-

tween the complainant's ability to remember only his face "shown by the police photograph, compared with her total inability to describe his chest and arms until after he removed his shirt, is clear and convincing evidence that the suggestive photo ID procedure gave rise to a very substantial likelihood of irreparable harm during his trial." We disagree.

Although the complainant admitted that she did not "recall" any tattoos on the perpetrator's body or whether he was missing front teeth, she testified that, at the time of the offense, she did not "pay attention" to the perpetrator's chest or arms because she "paid attention to his face and what he was doing." The complainant was shocked and "embarrassed" by the perpetrator's actions, and she focused on his face and noticed that he had "distinctive" eyes. The fact that the complainant did not notice the appellant's tattoos and his missing teeth does not detract from the accuracy of her description given prior to viewing the photographic array.

Fourth, the record shows that the level of the complainant's certainty as to her identification of appellant was consistently high. When the complainant was shown the photographic array, she identified appellant as the perpetrator immediately and without hesitation. She also unequivocally identified appellant as the perpetrator of the offense during the identification suppression hearing and at trial.

Finally, the record reveals that the complainant positively identified appellant in court, six months after the offense. Such a passage of time did not detract from the complainant's identification in this case because of her consistent testimony and ability to recall details. *See Delk*, 855 S.W.2d at 708. Moreover, the complainant testified that her in-court identification of appellant was based on what she had observed on the day of the offense, and not on her observation of the photographic array.

We conclude that all five *Biggers* factors, under the totality of the circumstances, support the trial court's decision to admit the complainant's in-court identification of appellant as the man that she saw masturbating in the gray Cadillac on April 28, 2002. Weighing this evidence of reliability against any possible corrupting effect of Deputy Constable Pantoja's comment that the complainant had "a good memory," we conclude that no substantial risk of irreparable misidentification was created. Accordingly, we hold that the trial court did not err in admitting into evidence the complainant's in-court identification of appellant as the perpetrator of the offense.

We overrule appellant's sole point of error.

### Conclusion

We affirm the judgment of the trial court.