Opinion issued August 4, 2005















In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01020-CR
____________

SENECCA TRISTAN DOUGLAS, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 992724
 

 
 
MEMORANDUM OPINION
             A jury found appellant, Senecca Tristan Douglas, guilty of the offense of
aggravated robbery


 and assessed his punishment at confinement for 10 years. In his
sole point of error, appellant contends that the trial court erred in denying his motions
to suppress identifications and in overruling subsequent oral objections to in-court
identifications. We affirm. 
Factual Background
             Minerva Sherwin, the complainant, an 82-year-old woman, testified that, on
November 22, 2003, as she was walking to the door of a nail salon, she passed two
men. When one of the men grabbed her purse, the strap caught on her left arm and
“ripped all the flesh off [her] hand.” She then fell to the ground and hit her head. She
had 18 dollars in her purse at the time it was taken. She did not clearly observe the
assailant. 
          Danaan Prophet, a registered nurse, testified that, on that date, she was sitting
inside the nail salon when she heard a “loud boom or crash.” She turned and saw the
complainant lying outside on the ground and saw the complainant’s oxygen tank
hitting the salon’s window. Prophet then looked upward and saw a black man, who
was wearing red shorts, a black or blue shirt, and black shoes, pulling at the
complainant’s purse. Prophet looked at the assailant’s face before she saw the purse’s
strap break. She then saw the assailant run around the corner of the building. 
Prophet identified appellant at trial as the man that she saw rob the complainant. 
          Scott Kubezca testified that he was inside the nail salon when he saw the
complainant being robbed. From inside the salon, he saw the complainant walking
toward the salon’s door as two men approached her from behind. He saw one man
grab her purse, pull her to the ground, and run away with the purse. Kubezca ran out
of the salon and followed the assailant on foot. He then saw the assailant meet up
with another man and saw both men get into the backseat of a blue Toyota Camry. 
Kubezca ran to get his own car to follow the Camry, and, after driving down a nearby
street, he saw the Camry parked in a residential driveway. He called for emergency
assistance and then saw the Camry leave the driveway. Kubezca again followed the
Camry, and, soon thereafter, he flagged down an officer in a patrol car. Kubezca
followed the patrol car to a cul-de-sac, and, by the time he arrived, several officers
had already stopped the Camry. As instructed by the officers, Kubezca returned to
the nail salon. The officers then brought several persons to the nail salon and asked
Kubezca and other witnesses if any of the persons was the assailant. Kubezca
positively identified appellant as the robber. He also identified appellant at trial as
the assailant.
          Houston Police Sergeant D. Poor testified that, at about 1:30 p.m., after she
arrived at the cul-de-sac where the Camry had been stopped, she and other officers
separated the male suspects and drove them to the nail salon to allow the witnesses
to the robbery to observe the suspects. At the salon, she learned that the
complainant’s purse had not been recovered. Poor eventually found the purse in a
flower bed after Kubezca led her to the residential driveway where the Camry had
first stopped. 
             Houston Police Officer S. Murdock testified that he arrived at the cul-de-sac
about 30 seconds after Houston Police Officer T. Harry had stopped the blue Camry
in the cul-de-sac. He saw that one of the men in car, whom he later identified as
appellant, was “dressed as the suspect was described to have been dressed” and that
this man was wearing red shorts, a black shirt, and a cap or “do-rag” on his head. 
After performing a weapons search, Murdock handcuffed appellant, separated the
men, and placed them into different patrol cars. Officers then drove the men to the
nail salon to be observed by witnesses. Murdock noted that he found 18 “crumbled”
dollars in appellant’s back right pocket.
             Officer Harry testified that a woman flagged him down in his patrol car and
told him that a robbery had occurred nearby and that the suspects had driven away in
a dark-colored Toyota Camry. Harry continued driving down the street and saw a
dark blue Camry drive onto the street in front of him. He followed the Camry into a
cul-de-sac and blocked its exit while he waited for more officers to assist him. 
Thereafter, officers removed appellant, Arthur Hill, Jack Jones, and two women from
the Camry and handcuffed them. The officers then drove the three men to the nail
salon. Harry had each witness look at the men from inside the salon to determine if
any of the men was the assailant. Harry stated that the witnesses, without hesitation,
identified appellant as the man who robbed the complainant. Harry also noted that
appellant was wearing red shorts and a black shirt on the day of the incident, that
Jones was wearing a green shirt with khaki pants, and that Hill was wearing a green
shirt and green jeans. 
             In his defense, appellant called Arthur Hill, who had already pleaded guilty to
the offense of aggravated robbery of the complainant and had received a sentence of
confinement for 15 years as punishment. Hill testified that he, appellant, Jack Jones,
“Teesha,” and another woman were driving around in a car and smoking marijuana. 
Because Jones needed to use a restroom, the group stopped near the nail salon. While
Jones left to find a restroom, the group stayed in the car and smoked marijuana. As
Jones was returning to the car, Hill left the car, and, on impulse, grabbed the
complainant’s purse, ran back to the car, and told Teesha to drive away. Hill noted
that appellant was sitting in the passenger seat of the car during that time, that
appellant was not with Hill when Hill took the complainant’s purse, and that he had
not noticed if appellant had ever left the car because Hill explained that he had been
high. After driving away from the nail salon, Teesha pulled into the driveway of a
house to make a telephone call. Hill moved into the driver’s seat, and, after Teesha
returned, drove off. Five to ten minutes later, a police officer in a patrol car stopped
the Camry in a cul-de-sac. Hill stated that he wore green clothing that day, that Jones
wore either red or brown clothing, and that appellant wore a black shirt and red
shorts. Hill further noted that, when he took the complainant’s purse, he was “high”
and that he had acted alone. 
          Appellant testified that, when his group stopped near the nail salon, he left the
car, walked to a corner store across the street to purchase cigarettes and cigars, and
walked back to the car after making his purchases. When he returned to the car,
Jones and Hill had not yet returned. Appellant explained that he did not see Hill
return to the car with the complainant’s purse because he was “high.” When Hill
returned to the car, Teesha drove away from the nail salon and pulled into the
driveway of a nearby residential house so that she could make a telephone call and
trade places with Hill so that Hill could drive. After Teesha returned to the car, Hill
drove away from the house. Law enforcement officers then stopped their car in a cul-de-sac. Appellant stated that he did not see the complainant on the day of the robbery
and that, although he was wearing a black shirt and red shorts, he was not wearing a
bandanna or a hat. 
Identification
          Appellant argues that the trial court erred in overruling his motions to suppress
identifications and his subsequent objections to the in-court identification testimony
of both Prophet and Kubezca because “the identification procedure used at the scene
was ‘an unduly suggestive procedure which created a substantial risk of irreparable
misidentification here in court.’” Appellant contends that the identification
procedure, referred to as a “show-up,” was impermissibly suggestive and that the law
enforcement officers should have, instead, conducted a “proper line up” or assembled
a photographic array. 
            At the beginning of Prophet’s testimony, when the State began to question
Prophet about her on-the-scene identification of appellant as the assailant, appellant
objected and requested that the court conduct a hearing on appellant’s motions to
suppress the identification. The trial court then conducted a hearing, outside the
presence of the jury, on appellant’s motions to suppress the identification testimony
of both Prophet and Kubezca. 
          During this hearing, Prophet testified that she had “a clear view” of the robbery
and that she had no vision or hearing impairments. She noted that the assailant was
a black male, who was about five feet, eleven inches tall, with a thin mustache and
thin side burns. She explained that the assailant was wearing red shorts with a dark
blue or black T-shirt, a baseball cap, and dark tennis shoes. She explained that she
gave the same description of the assailant to law enforcement officers at the scene of
the robbery. She then testified that, when she was shown three people at the scene,
the first person she saw was appellant, and that she identified appellant as the
assailant. She then made an in-court identification of appellant as the person she saw
commit the robbery. She further testified that she was shown neither a lineup nor a
photographic array to identify a suspect. 
          Kubezca testified that, as he was sitting inside the nail salon eating lunch and
looking out a window, he saw appellant walking behind the complainant as she
approached the salon’s door. He then testified that he saw appellant pull the
complainant to the ground, tear her purse away from her arm, drag her across the
ground, and then run away. He also testified that he had “a clear view” of the robbery
and that he had no visual or hearing impairments. Kubezca explained that he was
about four or five feet from the robbery and that he saw the assailant attack the
complainant for four to six seconds. He described the assailant as a six-foot tall black
man, who was wearing red shorts, a dark shirt, a bandanna, and a baseball cap. About
20 minutes after the robbery, law enforcement officers brought two women and two
men, including appellant, to the nail salon for him to observe. Kubezca identified
appellant as the assailant at the scene. He then made an in-court identification of
appellant as the person he saw commit the robbery. 
          The trial court overruled both of appellant’s motions to suppress identifications
and allowed both Prophet and Kubezca to testify. In the jury’s presence, both Prophet
and Kubezca essentially repeated their identification testimony that they each had
given outside the jury’s presence. After both witnesses identified appellant as the
assailant, appellant objected and re-urged his respective motions to suppress on the
grounds that the in-court identifications violated his state and federal constitutional
rights. 
            The standard of review of a question of whether an in-court identification
should not have been admitted due to the taint of an impermissibly suggestive pretrial
identification procedure depends upon the type of question presented to the reviewing
court. Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998); Burkett v.
State, 127 S.W.3d 83, 86 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Because
the question in this case is a mixed question of law and fact that does not turn on the
evaluation of the credibility and demeanor of the witnesses, we apply a de novo
standard of review. Loserth, 963 S.W.2d at 773; Burkett, 127 S.W.3d at 86. 
          A pretrial identification procedure may be so suggestive and conducive to
mistaken identification that subsequent use of that identification at trial would deny
the accused due process of law. Simmons v. United States, 390 U.S. 377, 384, 88 S.
Ct. 967, 971 (1968); Barley v. State, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995). 
We apply a two-step analysis to determine the admissibility of an in-court
identification and ask (1) whether the pretrial identification procedure was
impermissibly suggestive and, if so, (2) whether the impermissibly suggestive
procedure created a very substantial likelihood of irreparable misidentification. 
Simmons, 390 U.S. at 384, 88 S. Ct. at 971; Barley, 906 S.W.2d at 33. A defendant
bears the burden of establishing by clear and convincing evidence that the pretrial
identification procedure was impermissibly suggestive. Barley, 906 S.W.2d at 33-34. 
An analysis under these steps requires an examination of the totality of the
circumstances surrounding the particular case and a determination of the reliability
of the identification. Id. at 33.
          In regard to the first step, we note that suggestiveness may arise from the
manner in which a pretrial identification is conducted. Id. For example, a police
officer may point out the suspect or suggest that a suspect is included in a lineup or
photographic array. Id. Also, the content of a lineup or photographic array itself may
be suggestive if the suspect is the only individual who closely resembles the
description given by the witness. Id. Furthermore, an individual procedure may be
suggestive or the cumulative effect of procedures may be suggestive. Id. 
          If a court finds that a pretrial identification procedure was impermissibly
suggestive, it must then consider the factors enumerated in Neil v. Biggers to
determine whether the suggestive procedure gave rise to a substantial likelihood of
irreparable misidentification. 409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972). These
non-exclusive factors are (1) the witness’s opportunity to view the offender, (2) the
witness’s degree of attention, (3) the accuracy of the witness’s description of the
offender, (4) the level of certainty at the time of confrontation, and (5) the time
between the crime and confrontation. 409 U.S. at 199-200, 93 S. Ct. at 382. These
five factors are treated as issues of fact and are viewed in the light most favorable to
the trial court’s ruling. Ibarra v. State, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999). 
The five factors are then reviewed de novo against “the corrupting effect” of the
suggestive pretrial identification procedure. Id. at 195-96; Loserth, 963 S.W.2d at
773-74. Reliability is the “linchpin” in determining admissibility of such
identification testimony. Barley, 906 S.W.2d at 34. If sufficient indicia of reliability
outweighs suggestiveness, then an identification is admissible. Id. A defendant must
show by clear and convincing evidence that the identification has been irreparably
tainted. Id.           
          Appellant first argues that “the identification was impermissibly suggestive”
because (1) “the witnesses were shown two suspects in one case and three in the
other, but were shown them one at a time”; (2) “[o]ne witness didn’t even notice the
other two suspects, immediately focusing on [a]ppellant”; (3) appellant was
“handcuffed . . . and taken out of a police car in front of witnesses, demonstrating that
he was in custody”; and (4) “[i]t was clear to the witnesses that the police were
showing them suspects, not randomly selected individuals.” Appellant asserts that
the “trial court should have found this procedure inherently suggestive, and decided
whether to disallow the in-court identifications based on the five factors” outlined in
Biggers “to determine whether this suggestive procedure led to an irreparable risk of
misidentification.”
          One man “show-up” identifications are generally considered a suggestive
identification procedure; however, their suggestiveness does not necessarily render
a later in-court identification inadmissible. Garza v. State, 633 S.W.2d 508, 512
(Tex. Crim. App. 1982) (op. on reh’g). Moreover, a one man show-up, without more,
is not unnecessarily suggestive and does not violate due process. Biggers, 409 U.S.
at 198, 93 S. Ct. at 382; Garza, 633 S.W.2d at 512; see also Powell v. State, 837
S.W.2d 809, 811-12 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d).            
          Here, the record shows that appellant was not shown singly to the witnesses at
the nail salon. Rather, Prophet testified that she identified appellant as the assailant
after law enforcement officers showed her two other people. Kubezca testified that
he identified appellant as the assailant after law enforcement officers showed him two
men and two women. Furthermore, although the record indicates that appellant was
handcuffed and accompanied by law enforcement officers when shown to the
witnesses at the scene, Prophet and Kubezca testified that all the suspects shown to
the witnesses at the nail salon were handcuffed and accompanied by law enforcement
officers. Finally, the show-up identification of appellant at the scene occurred about
20 minutes after the robbery. 
          Assuming that the show-up identification was impermissibly suggestive, after
applying the Biggers factors, we conclude that the show up identification in this case
was not conducive to a very substantial likelihood of irreparable misidentification. 
First, both witnesses had adequate opportunities to view the assailant at the time of
the robbery. Prophet and Kubezca testified that they were sitting inside the salon
when, looking out a window, they saw appellant grab the complainant’s purse. 
Additionally, both Prophet and Kubezca testified that they had “a clear view” of the
robbery, and Kubezca testified that he was only about four or five feet away from the
robbery. Second, the degree of attention that the witnesses paid to the assailant was
significant. Prophet testified that she saw the assailant grab the complainant’s purse
from the complainant’s arm after Prophet heard “a large boom,” which caused her to
look out the salon’s window, saw the complainant’s oxygen tank striking the salon’s
window, and saw the complainant lying on the ground outside. Kubezca testified that
he saw the assailant approach the complainant from behind, grab her purse, drag her
to the ground, and then run away. Third, regarding the accuracy of the witnesses’
description, both Prophet and Kubezca were able to provide a detailed description of
appellant, which was consistently reported by the officers and largely unchallenged. 
Fourth, the record shows that the level of the witnesses’ certainty as to their
identification of appellant was consistently high. Prophet testified that, at the scene,
she immediately identified appellant as the robber, and the record shows that Kubezca
did not hesitate in identifying appellant at the scene as the assailant. Both witnesses
also unequivocally identified appellant as the assailant during the suppression hearing
and in the jury’s presence at trial. Finally, the time between the occurrence of the
offense and the on-scene identification was approximately 20 minutes. Both Prophet
and Kubezca testified that they identified appellant as the assailant at the scene about
20 minutes after the robbery occurred. Because both witnesses identified appellant
after such a short period of time, their recollections of the assailant were likely to be
fresh in their minds and more likely to be accurate. See Biggers, 409 U.S. at 201, 93
S. Ct. at 383 (finding no substantial likelihood of misidentification where
confrontation occurred seven months after crime); see also Webb v. State, 760 S.W.2d
263, 273 (Tex. Crim. App. 1988) (finding no substantial likelihood of
misidentification where confrontation occurred five months after crime). 
          We further conclude that the show-up identification at the scene of the robbery
was not so “corruptive” as to outweigh the factors supporting the identification. 
Nothing in the record shows that the detaining officers encouraged either Prophet or
Kubezca by word or action to identify appellant as the suspect. Furthermore, both
Prophet and Kubezca testified that they based their in-court identifications of
appellant on their observations of the assailant at the scene of the robbery. Thus, we
hold that, under the totality of the circumstances in the instant case, appellant has not
shown by clear and convincing evidence that there was a very substantial likelihood
of irreparable misidentification. Accordingly, we hold that the trial court did not err
in denying appellant’s motions to suppress identifications and subsequent objections
to the testimony of Prophet and Kubezca. 
          We overrule appellant’s sole point of error.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Hanks.
Do not publish. Tex. R. App. P. 47.2(b).