Opinion issued October 23, 2008


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00684-CR






DONALD WAYNE CLEMONS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 263rd District Court

Harris County, Texas

Trial Court Cause No. 1019997






MEMORANDUM OPINION

 A jury convicted appellant, Donald Wayne Clemons, of capital murder (1) and
assessed punishment at life in prison. In his sole point of error, appellant contends
that the trial court erred in denying his motion to suppress an in-court identification.

 We affirm.

Background


 On February 19, 2005, appellant approached two men, Sampson and Samuel
Huff, who were seated in a 1993 Cadillac Sedan outside of a barber school at 10700
South Gessner and demanded the keys to the vehicle. After saying, "Give me the
keys," and, "You think I'm playing," appellant started shooting. Sampson, who was
in the driver's seat, tossed the keys, and Samuel and Sampson ran away from the
vehicle in different directions. Appellant shot Sampson, who fell to the ground and
later died. Appellant also shot Samuel and wounded him in the lower back. Samuel
limped to the barber school to get help while appellant drove away with Sampson's
vehicle. An ambulance drove Samuel to the hospital. 

 One day after the shooting and while Samuel was still in the hospital, police
asked him to make an identification of the shooter. Although he gave an accurate
description of appellant, Samuel was unable to identify him from a photo spread. At
this time Samuel was in pain and taking pain medication.

 About a month after the shooting, Samuel identified appellant as the shooter
after viewing a live lineup with participants who repeated the phrase, "Give me the
keys." Appellant was the only person who appeared in both the photo spread and the
lineup. 

 Prior to trial, appellant moved to suppress the identification made by Samuel,
stating that the pre-trial identification procedures (as described above) were so
unnecessarily suggestive as to give rise to a substantial likelihood of irreparable
misidentification. Samuel and Sergeant J. Parker, the officer who conducted the
identification procedures, testified at a pretrial hearing regarding the pretrial
identification procedures. After hearing the testimony, the trial court denied
appellant's motion to suppress the identification, finding that the live lineup was not
suggestive. 

 At trial, the State presented evidence that appellant shot Sampson. Samuel
identified appellant as the shooter, and he told the jury he was absolutely sure that
appellant was the shooter. Prior to Samuel's in-court identification, appellant had
renewed his previous objection to the admission of the identification procedures. 

 Ashley Hickman, who was a friend of appellant, testified that prior to the
shooting appellant asked her to identify areas where "there are people with nice cars." 
She testified that appellant's reason for wanting to know was to "hit a few licks" and
move to New York. Hickman also testified that appellant threatened her with death
if she told anyone about his plans. Another witness, Maranda Cole, who dated
appellant, testified that she dropped appellant off at the parking lot where the incident
occurred and around the time of the shooting. She further contended that, after the
incident, appellant asked her for directions to Louisiana and demanded that she "keep
[her] story straight" on these "issues." Lastly, appellant conceded that he had
possession of Samuel's car after the incident. The jury returned a guilty verdict and
this appeal followed. 

Analysis


 In his sole point of error, appellant contends the trial court erred when it denied
his motion to suppress the in-court identification made on the basis that the pretrial
identification procedures were unnecessarily suggestive and gave rise to a substantial
likelihood of irreparable misidentification. 

 An in-court identification is inadmissible when (i) the photographic display
procedures are impermissibly suggestive and (ii) the suggestive procedures give rise
to a very substantial likelihood of irreparable misidentification. Simmons v. United
States, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968); Burkett v. State, 127 S.W.3d 83,
86 (Tex. Crim. App. 2003). The burden falls on the criminal defendant to show by
clear and convincing evidence that the in-court identification is unreliable. Burkett,
127 S.W.3d at 86. In addition, the reliability of an in-court identification "must be
considered on its own facts." Simmons, 390 U.S. at 384, 88 S. Ct. at 971; see also
Barley v. State, 906 S.W.2d 27, 33-34 (Tex. Crim. App. 1995). 

 To warrant the exclusion of Samuel's in-court identification, appellant had to
show that the photographic line-up identification procedure was impermissibly
suggestive. Santos v. State, 116 S.W.3d 447, 451, 455 (Tex. App.--Houston [14th
Dist.] 2003, pet. ref'd). A pretrial procedure may be suggestive, but that does not
necessarily mean it is impermissibly so. Barley, 906 S.W.2d at 34. Suggestiveness
may be created in the manner in which the pretrial identification procedure is
conducted, for example, by police pointing out the suspect or suggesting that a
suspect is included in the line-up. Id. at 33. A pretrial identification procedure is not
impermissibly suggestive, however, merely because a witness may have believed one
of the individuals in the line-up was a suspect. Harris v. State, 827 S.W.2d 949, 959
(Tex. Crim. App. 1992); Abney v. State, 1 S.W.3d 271, 275 (Tex. App.--Houston
[14th Dist.] 1999, pet. ref'd).

 Appellant argues that the "pretrial identification procedures were unnecessarily
suggestive because appellant's image was the only image which appeared in both the
lineup and the photo spread." He asserts that the procedures undermined the
reliability of the identification. He also contends, "Having seen only the appellant in
both the photo array and the lineup, the suggestiveness increases the likelihood that
he relied on the photograph contained in the array to identify appellant later at the
police station." In support of this contention, appellant cites Foster v. California, 394
U.S. 440, 89 S. Ct. 1127 (1969). 

 In Foster, the witness first viewed a lineup in which the defendant, Foster,
wore a jacket similar to that worn by one of the robbers involved in the crime and
stood beside two other persons who were significantly shorter than Foster. Foster,
394 U.S. at 441, 89 S. Ct. at 1127. After not being able to identify Foster as one of
the perpetrators, the witness was permitted to speak face-to-face with him. Id. The
witness was still not able to determine whether Foster was at the scene of the crime
and viewed another lineup 10 days later with Foster and four other men participating. 
Id. This time, the witness was convinced that Foster was one of the robbers. Id. The
United States Supreme Court held that the suggestive elements in this identification
procedure made it all but inevitable that the witness would identify the defendant and
so undermined the reliability of the witness identification as to violate due process. 
394 U.S. at 443, 89 S. Ct. at 1128.

 Here, the facts are distinguishable from the procedures used in Foster. See id. 
When Sergeant Parker interviewed Samuel at the hospital, Samuel had been shot the
day before, was in pain, and had taken pain medication. Sergeant Parker testified that
Samuel "appeared to be drugged." Sergeant Parker showed Samuel a photo spread
containing five photographs, including a photograph of appellant, but Samuel could
not identify the shooter. Although he was unable to identify appellant in the
photographic display, Samuel gave an accurate description of the shooter. 

 A month after the shooting, Samuel viewed a live lineup containing five black
males, including appellant. The suspects were asked to say the phrase, "Give me the
keys," and they were all of similar appearance. At that time, Samuel identified
appellant as the shooter. Although appellant was in the photo array shown to Samuel
right after the shooting and in the live lineup a month later, this fact alone does not
make the pretrial identification impermissibly suggestive. See Cantu v. State, 738
S.W.2d 249, 252 (Tex. Crim. App. 1987) (stating, "Not every case in which several
arrays or displays of a defendant containing different pictures of a defendant are
[shown is] suggestive."). In light of Samuel's condition when police showed him the
photo array, the pretrial procedure of having Samuel view a live lineup a month after
the shooting that also included appellant as a suspect was not impermissibly
suggestive. See Barley, 906 S.W.2d at 33-34 (holding that a suspect may appear in
more than one identification procedure when circumstances necessitate); cf. Cantu,
738 S.W.2d at 252 ("In the abstract, therefore, the procedure of showing [the witness]
several arrays on different occasions, all containing appellant's photograph, is a
suggestive procedure. Such procedure tends to highlight a particular defendant since
the witness sees the same face repeatedly."). 

 Even if a pretrial identification is impermissibly suggestive, an in-court
identification is admissible when the trial court has an adequate basis for concluding
that the in-court identification is reliable. Harris, 827 S.W.2d at 960. To determine
the reliability of the in-court identification testimony under the totality of the
circumstances, the following five factors should be considered:

(1) the opportunity of the witness to view the criminal at the time of the
crime;


(2) the witness's degree of attention;


(3) the accuracy of the witness's prior description of the criminal;


(4) the level of certainty demonstrated by the witness at the time of the
confrontation; and


(5) the lapse of time between the alleged act and the time of the
confrontation. 


Manson v. Brathwaite, 432 U.S. 98, 114-16, 97 S. Ct. 2243, 2253-54 (1977); Ibarra
v. State, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999). First, we weigh these factors
in a light favorable to the trial court's ruling; then we weigh the factors, viewed in
this light, de novo "against the 'corrupting effect' of the suggestive identification
itself." Ibarra, 11 S.W.3d at 195-96.

 Opportunity to View

 Samuel testified that, as he sat in the passenger side of the vehicle, he
witnessed a person walk towards the driver's side of his brother's vehicle. Samuel
had the opportunity to see and hear the person as he demanded the car keys and said,
"You think I'm playing?" Samuel testified that appellant's face was not even a foot
away. When appellant walked up, the window was down, and it was daylight outside. 
Samuel testified at trial that he remembered the person who shot his brother and was
absolutely sure appellant was the shooter. He based the identification on appellant's
physical appearance and voice. In addition, Samuel's in-court identification of
appellant was based on his observation of appellant during the offense. 

 Degree of Attention

 The facts indicate that Samuel's attention was focused on appellant from the
time appellant was dropped off until appellant came to the driver's side of the car
where Samuel and the complainant were sitting. Samuel listened to appellant as he
said, "Give me the keys," and, "You think I'm playing." Once appellant started
shooting, Samuel exited the vehicle from the passenger side and ran away. 

 Accuracy of Description

 When Sergeant Parker visited Samuel in the hospital, Samuel gave a general
description of the shooter. Samuel described the shooter as a black male who was
wearing a back football jersey and was around 5'10'' in height. Samuel's description
of appellant was accurate.

 Level of Certainty

 Samuel could not identify appellant in the photo array shown to him in the
hospital after he had been shot. At the live lineup, Samuel was able to positively
identify appellant as the shooter. Sergeant Parker testified that Samuel also thought
another person in the lineup looked similar but that it was not him because the person
had a tattoo and the shooter did not. Sergeant Parker testified that Samuel stated that
he was not 100 percent sure that appellant was the shooter. 

 Samuel testified that he could not identify any of the suspects in the photo
array, but he did recognize appellant in the live lineup. When asked if he was sure
of the identification in the lineup, Samuel stated, "I knew him right when I seen him." 

 Time Between Crime and Confrontation

 One day elapsed between the crime and the photo array. A month after the
crime, Samuel identified appellant as the shooter at the live lineup. 

 Other Considerations

 In this factor, we take into account that at the time that Samuel first saw the
photo array, he had just been shot, he was in pain, and he was on pain medication. 
Thus, in examining the totality of the circumstances, we place less weight on the fact
that appellant appeared in a photo array and a live lineup, considering that Samuel
may not have been in a clear state of mind when he first saw the photo array. We also
note that appellant testified that he did have tattoos on his hands and that he had them
prior to February 2005 while Samuel testified that appellant had no tattoos. 
Appellant's testimony was countered by evidence from another witness who testified
that she saw appellant wearing a bandana around his hands that may have precluded
Samuel from noticing the tattoo. 

 After reviewing the factors, we conclude that Samuel had sufficient opportunity
to view appellant at the time of the shooting. Appellant's face was less than a foot
away from Samuel, the window was open, and Samuel heard appellant make two
statements before the shooting began. Although Samuel could only give a general
description the day after the shooting, Samuel was in pain and under medication at
the time. Furthermore, at the time of the live lineup, Samuel testified that he was sure
that appellant was the shooter and that he was trying to recall the face of the shooter
from the day of the shooting. Morever, at trial Samuel identified appellant as the
shooter based on what he remembered from the day of the shooting. Weighing this
evidence of reliability against the possible suggestiveness of the pretrial identification
procedures, we conclude that the in-court identification did not create a substantial
likelihood of mistaken identification. See Ibarra, 11 S.W.3d at 196.

 We overrule appellant's sole point of error.Conclusion

 We affirm the judgment of the trial court.




 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes and Alcala.

Do not publish. Tex. R. App. P. 47.2(b).
1. See Tex. Penal Code Ann. § 19.03(a)(2) (Vernon 2003).