Affirmed and Memorandum Opinion filed February 23, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-01138-CR

___________________

 

Jason J. Winter, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 263rd District Court

Harris County,
Texas



Trial Court Cause No. 1035440

 



 

 

MEMORANDUM  OPINION

            A jury found appellant, Jason J.
Winter, guilty of sexual assault of a child.  See Tex. Penal Code Ann. §
22.011(a)(2)(A) (Vernon 2009).  The trial court assessed punishment at seven
years’ confinement in the Texas Department of Criminal Justice, Institutional
Division.  In a single issue, appellant argues the trial court erred in
admitting testimony that the complainant previously identified appellant in a
photo array.  We affirm.  

Factual And Procedural Background

            The
complainant testified that in early April 2005, she was fifteen years old and
had run away from home.  The complainant was staying with a friend named
Courtney.  One afternoon, at around 3 p.m., the complainant and Courtney
decided to go to Sharpstown Mall in Houston, Texas.  The girls took a Metro Bus
to the mall, which dropped them off across the street from the mall’s parking
lot.  While walking across the parking lot toward the mall, the girls
encountered appellant sitting in the driver’s seat of a flashy orange sport
utility vehicle.  Appellant called the girls over to his vehicle.  The girls
got inside the vehicle and began talking with appellant.  Appellant offered the
girls some marijuana, which they all smoked together.  The complainant
testified that after smoking and talking for approximately thirty minutes,
appellant decided to call his friend Hollywood in Florida so Courtney could talk
to him.  While Courtney and Hollywood spoke over the phone, appellant asked the
complainant questions about herself.  Next, appellant told the girls that he
was going to get them something to eat.  Appellant purchased food to-go from a
crawfish restaurant for Courtney and bought the complainant Chinese food from
another restaurant.  Appellant took the girls to a nearby Motel 6 where he rented
a motel room.  Inside the motel room appellant, the complainant and Courtney
ate dinner and smoked marijuana.  Appellant left the motel room and the girls
stayed there for the night.

            The girls woke up at approximately 11 a.m. the
next day.  Appellant stopped by the motel room and brought them more Chinese
food.  The three stayed in the motel room, smoking marijuana, watching
television, and eating.  Eventually, appellant told Courtney he was taking her
to the airport so she could fly to Florida and meet his friend Hollywood. 
Courtney willingly left with appellant.  The complainant stayed in the motel
room until appellant returned at around 8:30 p.m.  The complainant testified
that when appellant returned he took her to Sharpstown Mall to shop for new
clothing.  Appellant took the complainant to three different stores, including
a store called “Outfit Outlet” and another one called “5-7-9”.  While at “5-7-9,”
appellant asked a salesperson to find the complainant a revealing outfit. 
Appellant eventually purchased the complainant a short skirt and low-cut
shirt.  The complainant testified that she told appellant she felt
uncomfortable in the clothing and he responded by telling her she looked good
in them. 

            After going to the mall, the complainant
testified that appellant took her to an America’s Inn motel where she met a
woman named “Diamond.”  The complainant gave the jury a detailed description of
Diamond.  At the motel, appellant requested the complainant change into her new
clothing.  After the complainant changed, appellant took the complainant and
Diamond out to eat at a Denny’s restaurant.  When they arrived at the
restaurant, appellant’s behavior began to change.  Up until this point,
appellant had been, what the complainant described as, “extra friendly.”  At
the restaurant, appellant became cruel and referred to the complainant and
Diamond as “bitches.”  Appellant directed the complainant’s and Diamond’s
behavior.  Appellant would not allow the complainant to use the restroom by
herself and required Diamond to follow the complainant into the restroom
stall.  

            After dinner, they went to a third motel where
Diamond met a man in the parking lot.  Diamond got into the man’s vehicle, he
gave her money, and they went into one of the motel rooms.  Appellant and the
complainant waited in the parking lot for approximately thirty minutes until
Diamond returned from the motel room.  Diamond got back into appellant’s
vehicle and they returned to America’s Inn.  Appellant left the complainant and
Diamond alone in the motel room.  Diamond began encouraging the complainant to
become a prostitute.  The complainant refused and Diamond became angry. 
Diamond called appellant back into the motel room.  Before appellant arrived,
Diamond demanded that the complainant undress.  Once appellant arrived, Diamond
left the complainant and appellant alone in the room.  Appellant forced himself
on top of the complainant and had sexual intercourse with her.  

            The complainant testified that appellant took her
back to the room at Motel 6 where she had stayed the previous night.  Inside
the motel room, appellant talked to the complainant about becoming a
prostitute; the complainant eventually agreed to work for him.  After she
agreed, appellant left her alone in the room.  The complainant watched out the
motel window as appellant drove away and immediately called her mother.  The
complainant’s mother arrived shortly thereafter and called the police.  

            Approximately a month later, agents with the Federal
Bureau of Investigation (FBI) brought the complainant to the Children’s
Assessment Center (CAC) where a videotaped interview was conducted about the
incident.  During this interview, the complainant was shown a photo array of
possible suspects.  The forensic investigator at the CAC, who interviewed the
complainant, failed to give the complainant any of the traditional warnings or
instructions usually given by law enforcement before a witness views a photo
array.  The complainant immediately picked out appellant’s photo and began
cringing and crying.  Additionally, before identifying appellant, the
complainant gave a detailed description of the person who raped her.  She described
him as having a New York accent and wearing jewelry.  She said the man was
African-American, tall, muscular, and had many tattoos.   

            Appellant was charged with sexual assault of a
child and a jury found him guilty.  The trial court assessed his punishment at
seven years’ confinement.  Appellant timely filed this appeal.      

Discussion

            Appellant contends the trial court erred in
admitting evidence that the complainant identified him in the photo array.  Appellant
claims the complainant’s identification during the photo array was
impermissibly tainted because the complainant was not given the proper
admonishments before viewing the photo array and because appellant’s photograph
was not similar enough to the other photographs.               

I.         Applicable Law

            A pretrial identification procedure may be
so suggestive and conducive to mistaken identification that subsequent use of
that identification at trial would deny the accused due process of law.  See
Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed.
2d 1247 (1968); Barley v. State, 906 S.W.2d 27, 32–33 (Tex. Crim. App.
1995).  When challenging the admissibility of a pretrial identification, an
accused has the burden to show: (1) the out-of-court identification procedure
was impermissibly suggestive, and (2) the suggestive procedure gave rise to a
substantial likelihood of irreparable misidentification.  Barley, 906
S.W.2d at 33.  If a court finds that a pretrial identification procedure was
impermissibly suggestive, it must then consider the factors enumerated in Neil
v. Biggers to determine whether the suggestive procedure gave rise to a
substantial likelihood of irreparable misidentification.  Neil v. Biggers,
409 U.S. 188, 199, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401 (1972).[1]  A defendant bears
the burden of establishing by clear and convincing evidence that the pretrial
identification procedure was impermissibly suggestive.  Barley, 906
S.W.2d at 33–34. 

            In regard to the first step, suggestiveness may be
created by the manner in which a pretrial identification procedure is
conducted.  Id. at 33.  For example, a police officer may point out the
suspect or suggest that a suspect is included in a line-up or photographic
array.  Id.  The content of a line-up or photographic array itself may
be suggestive if the suspect is the only individual who closely resembles the
description given by the witness.  Id. Furthermore, an individual
procedure may be suggestive or the cumulative effect of procedures may be suggestive. 
Id.  

II.        Standard of Review

            In reviewing the trial court’s decision on the
admissibility of a pretrial identification, we defer to the trial court’s
rulings on mixed questions of law and fact if they turn on the credibility and
demeanor of witnesses.  See Loserth v. State, 963 S.W.2d 770, 772 (Tex.
Crim. App. 1998).  We review de novo mixed questions of fact and law
that do not turn on an evaluation of credibility and demeanor.  Id.  The
question of whether a pretrial identification procedure was impermissibly
suggestive is a mixed question of law and fact that does not turn on an
evaluation of credibility and demeanor.  See id. at 773.  Accordingly,
we apply a de novo standard of review.  Id.  However, the Biggers
factors, used to determine whether an impermissibly suggestive identification
procedure gives rise to a substantial likelihood of irreparable
misidentification, are treated as historical issues of fact and are viewed in
the light most favorable to the trial court.  Id.

            The Court of Criminal Appeals has held appellate
courts are not limited to reviewing only the evidence adduced at the
admissibility hearing when considering the identification.  Webb v. State,
760 S.W.2d 263, 272 n. 13 (Tex. Crim. App. 1988).  An appellate court may review
both the hearing testimony and evidence adduced at trial when determining the
admissibility of a pre-trial identification.  Id. 

III.      Analysis 

            Assuming without deciding that the
pretrial identification procedure was impermissibly suggestive, we move
directly to the second prong of our inquiry and determine whether the allegedly
suggestive procedure gave rise to a substantial likelihood of irreparable
misidentification.  See Brown v. State, 64 S.W.3d 94, 101 (Tex.
App.—Austin 2001, no pet.).  In conducting this analysis, we look to the five Biggers
factors for guidance.  Id.; see Biggers, 409 U.S. at
199–200, 93 S. Ct. 375 at 382.  The Court of Criminal Appeals has held that we
are to treat the Biggers factors as issues of fact and review them in a
light most favorable to the trial court’s ruling.  Brown, 64 S.W.3d at
101.    

            A.        Opportunity to View

            Applying the Biggers factors, we first
note the complainant had an adequate opportunity to view appellant at the time
of the offense.  Burkett v. State, 127 S.W.3d 83, 88 (Tex. App.—Houston
[1st Dist.] 2003, no pet.).  The complainant intially saw appellant in the
Sharpstown Mall parking lot sometime in the afternoon.  Subsequently, the
complainant spent two days with appellant and had a high level of interaction
with him.  Appellant took the complainant out to eat, to the mall, and spent
time with her in two different motel rooms.  See id. (noting a victim
had an adequate time to view the defendant when she saw him for about 15 to 20
seconds in broad daylight).  

            B.        Degree of Attention

            The record reveals the complainant paid a great
deal of attention to appellant and her surroundings while she was in his
custody.  See id.  The complainant was able to recall the first moment
she met appellant in his orange sport utility vehicle until he delivered her to
the Motel 6 room on the second floor of the motel building.  She remembered
every meal they ate and specifically two of the stores he took her to at the
mall.  Additionally, the complainant gave a detailed description of a woman
named “Diamond” whom the complainant met while she was with appellant.  As seen
in the factual recitation above, the complainant’s description of the two days
she spent with appellant was highly detailed. 

            C.        Accuracy of Description 

             Before the complainant identified appellant, she
gave a description of appellant to the forensic investigator.  The complainant
described him as a tall African-American male with a New York accent and many
tattoos.  The complainant also said appellant wore a lot of jewelry.  This is
an accurate description when compared to appellant’s photograph and driver’s
license information, which shows his state of birth to be New York. 
Furthermore, the trial judge had an opportunity to view appellant and compare
him to the complainant’s description.  Viewing this evidence in the light most
favorable to the verdict we presume the trial court found the complainant’s description
accurately described appellant.  Loserth, 963 S.W.2d at 773.

            D.        Level of Certainty 

            The level of complainant’s certainty as to her
identification was consistently high.  See id. at 89.  The complainant
immediately began crying when she saw the photo of appellant and did not
hesitate in her identification.  See Santos v. State, 116 S.W.3d 447,
454–55 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d) (certainty regarding
in-court identification can be inferred from how victim reacted to seeing the
defendant).  She also unequivocally identified appellant at trial.  See Burkett,
127 S.W.3d at 89. 

            E.        Time between Crime and Confrontation

            The complainant identified appellant in
the photo array one month after the sexual assault occurred.  This short lapse
of time between the sexual assault and photo identification provides support
for the conclusion that the identification of appellant is reliable.  See
Santos, 116 S.W.3d at 455. 

            All the Biggers factors weigh in favor of
finding the complainant’s identification reliable.  Therefore, we conclude no substantial
risk of irreparable misidentification was created by the photo array. 
Accordingly, the trial court did not err in allowing testimony that the
complainant previously identified appellant in a photo array.  Therefore, we
overrule appellant’s sole issue on appeal.      

Conclusion

            Having overruled
appellant’s sole issue on appeal, we affirm the judgment of the trial court.

  

 

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Chief
Justice Hedges and Justices Anderson and Mirabal.*

Do
Not Publish — Tex. R. App. P. 47.2(b).

 

*
Senior Justice Margaret Garner Mirabal sitting by assignment.









[1] These factors are: (1)
the witness’s opportunity to view the criminal at the time of the crime, (2) the
witness’s degree of attention, (3) the accuracy of the witness’s prior
description of the suspect, (4) the level of certainty at the time of
confrontation, and (5) the time between the crime and confrontation.  Biggers,
409 U.S. at 199–200, 93 S. Ct. at 382.