ACCEPTED
01-14-00684-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/21/2015 2:55:32 PM
CHRISTOPHER PRINE
CLERK

**No. 01-14-00684-CV**
In the
Court of Appeals
For the
First District of Texas
At Houston

——————◆——————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/21/2015 2:55:32 PM
CHRISTOPHER A. PRINE
Clerk

**No. 2013-05802J**
In the 313th District Court
Of Harris County, Texas

——————◆——————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/21/2015 2:55:32 PM
CHRISTOPHER A. PRINE
Clerk

**IN THE MATTER OF M.I.S.**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

——————◆——————

STATE'S APPELLATE BRIEF

——————◆——————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**DAN MCCRORY**
Assistant District Attorney
Harris County, Texas
mccrory_daniel@dao.hctx.net

**MARTINA LONGORIA**
**RYAN MCLEAREN**
Assistant District Attorneys
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713/755-5826
FAX No.: 713/755-5809

*Counsel for Appellee*

ORAL ARGUMENT GRANTED

# STATEMENT REGARDING ORAL ARGUMENT

This Court has granted oral argument.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ..................................................i

INDEX OF AUTHORITIES ........................................................... iii

STATEMENT OF THE CASE...........................................................1

STATEMENT OF FACTS .............................................................1

SUMMARY OF THE ARGUMENTS....................................................4

REPLY TO POINT OF ERROR ONE..................................................5

REPLY TO POINTS OF ERROR TWO AND THREE ..........................................11

REPLY TO POINT OF ERROR FOUR ..................................................27

CONCLUSION ...................................................................34

CERTIFICATE OF SERVICE ........................................................35

CERTIFICATE OF COMPLIANCE ....................................................35

# INDEX OF AUTHORITIES

**CASES**

*Baird v. State*,
398 S.W.3d 220 (Tex. Crim. App. 2013)...................................................... 12, 19

*Barley v. State*,
906 S.W.2d 27 (Tex. Crim. App. 1995)................................ 16, 17, 23, 24, 25, 26

*Blackshear v. State*,
385 S.W.3d 589 (Tex. Crim. App. 2012).................................................................30

*Brown v. State*,
64 S.W.3d 94 (Tex. App.--Austin 2001, no pet.)..................................................26

*Broxton v. State*,
909 S.W.2d 912 (Tex. Crim. App. 1995)................................................................30

*Burkett v. State*,
127 S.W.3d 83 (Tex. App.--Houston [1st Dist.] 2003, no pet.) .................... 20, 21

*Cantu v. State*,
738 S.W.2d 249 (Tex. Crim. App. 1987)................................................................25

*Cienfuegos v. State*,
113 S.W.3d 481 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd).....................21

*Dewberry v. State*,
4 S.W.3d 735 (Tex. Crim. App. 1999).....................................................................30

*Gil v. State*,
No. 08-05-00108-CR, 2007 WL 926470 (Tex. App.--El Paso
Mar. 29, 2007, no pet.) (not designated for publication) ......................................9

*Grace v. Duke*,
54 S.W.3d 338 (Tex. App.--Austin 2001, pet. denied)................................. 29, 30

*Hahn v. Love*,
394 S.W.3d 14 (Tex. App.--Houston [1st Dist.] 2012, pet. denied).......................8

*Harrison v. State*,
    187 S.W.3d 429 (Tex. Crim. App. 2005)................................................................31

*In re D.B*,
    594 S.W.2d 207 (Tex. App.--Corpus Christi 1980, no writ) ...............................29

*In re D.J.C.*,
    312 S.W.3d 704 (Tex. App.--Houston [1st Dist.] 2009, no pet.)........................12

*In re F.L.R.*,
    293 S.W.3d 278 (Tex. App.--Waco 2009, no pet.) ................................................8

*In re I.L.*,
    389 S.W.3d 445 (Tex. App.--El Paso 2012, no pet.) .............................................8

*In re I.P.*,
    No. 04-98-00588-CV, 1999 WL 191589 (Tex. App.--San
    Antonio Apr. 7, 1999, no writ) (not designated for publication) ........................29

*In re J.H.C.*,
    No. 08-02-00244-CV, 2003 WL 1948985 (Tex. App.--El
    Paso Apr. 24, 2003, no writ) (not designated for publication)...................... 29, 30

*Kelly v. State*,
    No. 14-13-00087-CR, 2014 WL 2446616 (Tex. App.--Houston [14th Dist.]
    May 29, 2014, no pet.) (not designated for publication) ....................................18

*Leza v. State*,
    351 S.W.3d 344 (Tex. Crim. App. 2001)...............................................................9

*Martinez v. State*,
    190 S.W.3d 254 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd)......................9

*Mims v. State*,
    434 S.W.3d 265 (Tex. App.--Houston [1st Dist.] 2014, no pet.).................. 18, 20

*Molandes v. State*,
    571 S.W.2d 3 (Tex. Crim. App. 1978)...................................................................9

*Mungia v. State*,
    911 S.W.2d 164 (Tex. App.--Corpus Christi 1995, no pet.)...............................21

*Neil v. Biggers*,
  409 U.S. 188 (1972) ..................................................................................16

*Rocha v. Faltys*,
  69 S.W.3d 315 (Tex. App.--Austin 2002, no pet.)................................................31

*Rodriguez v. State*,
  No. 07-11-00270-CR, 2013 WL 3355724 (Tex. App.--Amarillo
  June 26, 2013, no pet.) (not designated for publication) ....................................18

*Rojas v. State*,
  171 S.W.3d 442 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd) ..................26

*Tamez v. State*,
  205 S.W.3d 32 (Tex. App.--Tyler 2006, no pet.)....................................................9

*United States v Watson*,
  12-4012, 540 Fed. Appx. 512, 515, 2013 WL
  5508874 (6th Cir. Oct. 4, 2013) ........................................................................18

*Walker v. State*,
  No. 13-11-00225-CR, 2011 WL 6916545 (Tex. App.--Corpus
  Christi Dec. 29, 2011, no pet.) (not designated for publication)........................22

*Watts v. Watts*,
  396 S.W.3d 19 (Tex. App.--Houston [1st Dist.] 2012, no pet.) ...........................8

## STATUTES

TEX. CODE CRIM. PROC. ANN. art. 29.06 (West 2006) ............................................31

TEX. CODE CRIM. PROC. ANN. art. 29.08 (West 2006) ............................................30

TEX. FAM. CODE ANN. § 51.17 (West 2014).........................................................28

# RULES

TEX. R. APP. P. 39.7 ................................................................................ i

TEX. R. CIV. P. 251 ...............................................................................29

TEX. R. CIV. P. 252...............................................................................29

TEX. R. CIV. P. 286...............................................................................8, 10

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

The State filed a petition alleging that appellant, a juvenile, engaged in delinquent conduct by committing the offense of aggravated robbery. (CR 6). After finding that appellant had engaged in the alleged delinquent conduct and further finding that he was in need of rehabilitation, the trial judge committed appellant to the custody of the Texas Juvenile Justice Department for ten years. (CR 47-48).

## STATEMENT OF FACTS

The complainant, Orlando Caval, drove to pick up his wife from her job at Marshalls at about 10:40 p.m. (RR III 23). He parked near the store in an area lit by light poles. (RR III 27-29; RR VIII – SX 136; RR IX – SX 140). The complainant remained in his car as he waited for his wife to get off work. (RR III 32).

A small sedan containing two males and a female pulled up next to the complainant's passenger side. (RR III 32-34, 46). The complainant rolled down his passenger window and the female driver asked for directions to a particular street. (RR III 33). The complainant offered to look up the street on his cell phone and began browsing his phone. (RR III 33-34).

While focusing on his phone, the complainant heard one of the males, appellant, try to open his locked driver's side door. (RR III 34-35, 48). The complainant told appellant to remain where he was while the complainant concentrated on retrieving the requested information from his phone. (RR III 35, 141-142). Appellant walked away. (RR III 141-142).

Appellant walked to the complainant's rolled-down passenger window and pointed a shotgun at the complainant's face. (RR III 41, 142-144). The shotgun's barrel was actually inside the complainant's car and appellant had his finger on the trigger. (RR III 41-42). The gun was within 12 inches of the complainant's head. (RR III 43-44).

While the gun was pointed at the complainant's head, the female ordered him to exit his car and to leave his wallet and other belongings behind. (RR III 44). The complainant complied and began walking toward Marshalls. (RR III 49). As he walked away, the complainant heard someone slam his door shut and speed away in his car. (RR III 49-50). Once the robbers were gone, the complainant called 911 and an officer arrived. (RR III 51). The complainant gave the officer a description of the robbers. (RR III 51).

Sergeant Scott Ashmore was the lead investigator assigned to this case. (RR IV 21, 44). The day after the robbery, a witness told Sergeant Ashmore that Brenda Flores was a possible suspect in the robbery. (RR IV 26, 126-127). Sergeant

Ashmore obtained a photograph of Flores and placed it in a photospread with the images of five other women. (RR IV 26-27, 127; RR VIII – SX 120). A short time later, the complainant viewed the photospread and positively identified Flores as the female driver from the robbery. (RR III 57-58; RR IV 26-28).

After the complainant identified Flores as one of the robbers, Sergeant Ashmore went to the district attorney's office and secured a warrant for her arrest. (RR IV 28). As he headed home from the district attorney's office, Sergeant Ashmore happened to overhear some "radio traffic" that prompted him drive to a house that had just been burglarized. (RR III 225-226, 241-242; RR IV 29). When he arrived, he found appellant, Flores, and Neiman Gasper in custody for the commission of the burglary. (RR III 228-232, 241-246; RR IV 29-30). This incident occurred about 18 hours after the robbery. (RR IV 67).

Sergeant Ashmore transported the three suspects to a substation, where he placed appellant in a juvenile holding tank and then interviewed the other two suspects. (RR IV 30-31). Flores and Gasper both identified appellant as the gunman in the complainant's robbery. (RR IV 31-32). Later, the complainant identified appellant in a photospread as the gunman who robbed him. (RR III 61-62; RR IV 37-40).

3

# SUMMARY OF THE ARGUMENTS

Point one:    The trial judge correctly instructed the jurors to answer the second question in appellant's favor if they were not unanimous because a verdict favorable to the defendant may be returned by a non-unanimous verdict. Furthermore, Rule 286 of the Texas Rules of Civil Procedure permitted the judge, on his own motion, to submit the instruction after the jury began deliberations since the instruction related to a matter of law, not fact. Namely, the instruction addressed the legal issue of how the jurors were to answer the second question in the face of their inability to unanimously agree on an answer.

Points two and three:    The trial judge did not abuse his discretion by denying appellant's motion to suppress the complainant's out-of-court and in-court identifications of appellant. Of the five circumstances that appellant identifies as rendering the photospread identification procedure impermissibly suggestive, the only one that possibly actually was impermissibly suggestive was the officer's confirmation to the complainant that he had picked the correct suspect. But this suggestiveness did not give rise to a substantial likelihood of irreparable misidentification because the complainant had a good opportunity to see appellant during the robbery, the complainant paid attention to appellant during this time, the complainant was certain of his identification of appellant, and the time passage between the crime and the confrontation did not have a detrimental effect on the

4

identification. Moreover, the complainant testified that would have been able to identify appellant in court even if he had not viewed the photospread.

Point four: The trial judge did not err in denying appellant's motion for continuance because (assuming the civil rules apply) the motion was not supported by the requisite affidavit, or (assuming the criminal rules apply) the motion was unsworn. Furthermore, appellant did not demonstrate that Funk's testimony was material since appellant's failure to be in the company of his two accomplices 2.5 hours after the charged robbery has very little bearing, if any, on whether he participated in the robbery.

## **REPLY TO POINT OF ERROR ONE**

In his first point of error, appellant contends the trial judge erred by submitting a supplemental instruction after the jurors had begun their deliberations. Appellant maintains that the judge lacked authority to submit such an instruction and that the instruction harmed him.

Relevant facts

The jury charge posed two questions to the jury. First, it asked the jurors to determine whether appellant committed the charged offense (as either a principal or a party). (RR V 9-11; CR 43). The second questions asked: "Do you find from the evidence beyond a reasonable doubt that the respondent, [appellant], did then and there use or exhibit a deadly weapon, namely a firearm, during the commission

5

of or during the immediate flight from the commission of the aggravated robbery alleged in the petition?" (CR 44). The verdict form allowed the jury to answer this second question either "WE DO" or "WE DO NOT." (CR 44).

After deliberating a number of hours, the jurors sent the judge a note indicating that they were "hopelessly deadlocked" on the second question and sought advice on how to proceed. (RR V 13). The judge directed the jury back to the submitted jury charge. (RR V 14).

The next day, the prosecutor proposed providing the jury a supplemental instruction for the second question. (RR VI 12-13). She recommended adding the following sentence to the original version of the second question: "You are further instructed that if you cannot unanimously agree on an answer to this question, then you will state in your answer for Question No. 2, We do not." (RR VI 13, 30). The prosecutor explained that this instruction "clarifies for the jury the exact question they had." (RR VI 13). She further explained that the additional instruction benefitted appellant because it directs the jury to resolve the deadly weapon issue in his favor if the jurors were not unanimous in their answer. (RR VI 14).

Following appellant's objections to the submission of the proposed supplemental instruction, the judge agreed that the instruction would benefit appellant on the deadly weapon issue. (RR VI 14-23). The judge then announced that he would allow the jurors to continue deliberations "a little while longer"

6

before providing them with the proposed supplemental instruction. (RR VI 25). Shortly thereafter, the jurors sent out a second note stating that they had exhausted all discussions and were still unable to reach a unanimous decision on the second question. (RR VI 33). The judge then provided the jury with the proposed supplemental instruction that directed the jurors to answer "we do not" on the second question if they could not unanimously agree on an answer to the question. (RR VI 36-37).

About fifteen minutes later, the jury returned with an answer to both questions. The jurors replied "we do" in response to the first question, finding appellant engaged in delinquent conduct by committing the charged offense. (RR VI 39). The jurors answered "we do not" to the second question. (RR VI 39).

The judge polled the jury. (RR VI 39-41). All twelve jurors confirmed "we do" was their verdict on the first question. (RR VI 39-40). Regarding the second question, only one juror confirmed that "we do not" was his or her verdict. (RR VI 40-41). In other words, only one juror determined that appellant did not use or exhibit a deadly weapon during the offense's commission. The eleven other jurors disavowed this verdict, evidently believing appellant used a deadly weapon. (RR VI 40-41). Given the language of the supplemental instruction, the single juror's belief that appellant did not use a weapon was enough to prevent the entry into the judgment of a deadly weapon finding. (CR 47).

7

<u>Argument and analysis</u>

As mentioned, appellant argues the trial judge erred by submitting the supplemental jury instruction pertaining to the second question after the jury had already begun deliberating. The Rules of Civil Procedure govern the charge in a juvenile proceeding. *In re I.L.*, 389 S.W.3d 445, 451 (Tex. App.--El Paso 2012, no pet.); *In re F.L.R.*, 293 S.W.3d 278, 281 (Tex. App.--Waco 2009, no pet.). The standard of review for alleged error in the jury charge is abuse of discretion. *Hahn v. Love*, 394 S.W.3d 14, 37 (Tex. App.--Houston [1st Dist.] 2012, pet. denied).

Rule 286 of the Texas Rules of Civil Procedure addresses the issue of supplemental instructions. It provides: "After having retired, the jury may receive further instructions from the court touching any matter of law, either at their request or upon the court's own motion." TEX. R. CIV. P. 286. Issues involving the submission of supplemental instructions under this rule are reviewed for an abuse of discretion. *Watts v. Watts*, 396 S.W.3d 19, 21-22 (Tex. App.--Houston [1st Dist.] 2012, no pet.).

Appellant raises several complaints about the judge's submission of the supplemental instruction. First, appellant appears to claim the instruction was improper because it allowed the jury to return a non-unanimous answer to the second question. Generally, the Texas Constitution and the Texas Code of Criminal Procedure require a unanimous verdict in all felony cases. *Leza v. State*,

8

351 S.W.3d 344, 356 (Tex. Crim. App. 2001). This unanimity requirement applies to the elements of an offense. *Tamez v. State*, 205 S.W.3d 32, 44 (Tex. App.--Tyler 2006, no pet.); *Martinez v. State*, 190 S.W.3d 254, 258 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd).

A deadly weapon affirmative finding allegation is not an essential element of a charged offense. *See Tamez*, 205 S.W.3d at 45. Therefore, a lack of unanimity on the deadly weapon issue does not produce a lack of jury unanimity on an element of the offense. *Id.* As such, unanimity is not required in the jury's answer to the deadly weapon question.

Furthermore, a defendant's right to a unanimous verdict applies only to a verdict adverse to the defendant; a verdict favorable to a defendant may be returned on a non-unanimous agreement. *Molandes v. State*, 571 S.W.2d 3, 4 (Tex. Crim. App. 1978). As observed by the trial judge, the jury's answer to the second question benefitted appellant because it resulted in there being no deadly weapon finding. (RR VI 22-23). Since the verdict for the second issue benefitted appellant, unanimity was not required. *Id.*; *see also Gil v. State*, No. 08-05-00108-CR, 2007 WL 926470, at *6 (Tex. App.--El Paso Mar. 29, 2007, no pet.) (not designated for publication) ("the deadly weapon special issue was not an element of the offense; therefore, there is no issue of the jury's not having returned a unanimous verdict."). Accordingly, the content of the supplemental instruction was proper.

9

Second, appellant argues the submission of the supplemental instruction was error because the jury did not request such an instruction. Rule 286, however, allows further instructions at the jury's request or "upon the court's own motion." TEX. R. CIV. P. 286. Therefore, as occurred in this case, the trial judge may provide the jury a supplemental instruction without a request from the jury. The absence of a jury request did not render the submission of the instruction erroneous.

Third, appellant claims Rule 286 does not warrant the submission of the supplemental instruction because the rule authorizes only additional instructions "touching any matter of *law*." TEX. R. CIV. P. 286 (italics added). Appellant maintains that rule 286 is inapplicable because the jury was deadlocked on a question of *fact*, namely, whether appellant used or exhibited a deadly weapon. While the jurors may have disagreed about the *fact* of whether appellant used a deadly weapon, the supplemental instruction addressed the *legal* issue of how such a disagreement ought to be resolved for purposes of answering the second question. In other words, the instruction directed the jurors how to proceed, as a "matter of law," in the face of their inability to agree. Accordingly, Rule 286 was applicable and authorized the judge's submission of the supplemental instruction.

Fourth, appellant claims the judge erred by submitting the supplemental instruction because the jury may have interpreted it as applying to the first question as well, causing the jurors to believe unanimity was not required for the first

10

question. The judge, however, instructed the jury in very clear terms that the supplemental charge was applicable only to the second question. (RR VI 36-37). There was no basis, therefore, for the jury to believe that the content of this instruction touched upon the first question. In any event, the post-verdict polling of the jury confirmed that the jurors were in fact unanimous on the first question. (RR VI 39-40). Accordingly, there was no error.

Even assuming the judge did err by submitting the instruction, any error was harmless because, as the judge observed (RR VI 22-23), the supplemental instruction benefitted appellant since it authorized a negative finding on the deadly weapon special issue even if only a single juror voted against the finding. As such, it disabused the jury of any notion that a negative finding required a unanimous vote on the issue. Since the instruction made it much easier for appellant to obtain a favorable verdict on the second question, he was not harmed by its submission.

Accordingly, appellant's first point of error is meritless and should be overruled.

## REPLY TO POINTS OF ERROR TWO AND THREE

In his next two points of error, appellant contends the trial judge erred by denying his motion to suppress the complainant's identifications of appellant. (RR III 70, 118). In his second point, appellant claims the judge erred in admitting evidence of the complainant's out-of-court identification of appellant. In his third

point, appellant argues the judge erred in admitting evidence of the complainant's in-court identification of appellant. In both points of error, appellant asserts that the pretrial identification procedure was impermissibly suggestive and rendered the identification unreliable.

### 1. Standard of review

A trial judge's ruling on a motion to suppress in a juvenile case is reviewed under the same standard as used in adult criminal proceedings. *In re D.J.C.*, 312 S.W.3d 704, 711 (Tex. App.--Houston [1st Dist.] 2009, no pet.). An appellate court reviews a trial judge's suppression ruling under a bifurcated standard. *Baird v. State*, 398 S.W.3d 220, 226 (Tex. Crim. App. 2013). Almost total deference is afforded to the trial judge's determination of fact. *Id*. The trial judge is the sole arbiter of questions of fact and of the weight and credibility to give testimony. *Id*. In this capacity, the judge is free to believe or disbelieve any part of any witness's testimony. *Id*. The trial judge's determination of the legal significance of the facts, however, is reviewed de novo. *Id*.

### 2. The facts relating to appellant's suggestiveness claims

The trial judge conducted a midtrial hearing on appellant's motion to suppress the complainant's identifications of appellant. (RR III 69-118). The complainant testified that he went to the police station the day after the robbery and Sergeant Ashmore showed him a photospread containing six males of similar

12

appearance. (RR III 52-53, 59-62). The complainant picked appellant from the photospread. (RR III 62, 110, 113-114). He was "very positive" of his identification of appellant. (RR III 80). Regarding the identification, the complainant explained that appellant's nose "really stands out." (RR III 86).

On appeal, appellant contends the identification procedure that led to this out-of-court identification was impermissibly suggestive, which rendered it unreliable. Appellant argues the procedure was impermissibly suggestive because: (1) Sergeant Ashmore did not employ a double-blind process when he administered the photospread identification procedure; (2) Sergeant Ashmore sat directly across from the complainant which allowed him to see the photospread (resulting in the possibility that the officer inadvertently relayed visual clues to the complainant); (3) after the complainant identified appellant, Sergeant Ashmore told him he had picked the right person and provided him appellant's name; (4) appellant's photograph was the only one in which the person was wearing a striped shirt; and (5) two of the remaining five fill-in photographs depicted the same person. (appellant's brief, pp. 13-14).

Regarding appellant's first claim, Sergeant Ashmore explained that, with regard to the administration of photospread identification procedures, a "blind administrator" procedure involves having one officer create the photospread and having a second officer (who does not know the suspect's position in the

13

photospread) show the photospread to the witness. (RR III 93; RR IV 48-49). This procedure avoids the possibility that the officer who shows the photospread to the witness might subconsciously provide the witness subtle clues about the suspect's position. (RR III 94). It is undisputed that Sergeant Ashmore did not employ a blind administrator; he alone created the photospread and administered it. (RR III 95-96; RR IV 49).

Regarding appellant's second claim, the complainant testified that he and Sergeant Ashmore were sitting at a desk across from one another so that the officer could see the photospread while the complainant examined it. (RR III 73-74, 79-80, 172). However, Sergeant Ashmore testified that he was behind the complainant while the complainant viewed the photospread. (RR III 113). He was not in front of the complainant where he would have been able to see the photospread. (RR III 113-114).

Regarding appellant's third claim, the complainant testified that after he picked appellant's picture out of the photospread, Sergeant Ashmore told him appellant's name. (RR III 85). The complainant stated the officer "might have" also told him that he "got [the identification] right." (RR III 85). Sergeant Ashmore testified that he told the complainant he had picked the right person and provided him appellant's name. (RR III 114; RR IV 79). Sergeant Ashmore admitted that it was a violation of his department's policy to provide a witness

14

feedback about his selection. (RR III 101, 107-108). The officer explained that he violated the policy in this instance because the complainant feared the robbers would visit his home because they had his keys and his identifying information. (RR IV 42). Sergeant Ashmore wanted to ease the complainant's concerns by letting him know he had picked the right suspects and, therefore, he could carry on his life without fear that the robbers would harm him. (RR IV 42-43).

Regarding appellant's fourth claim, it is undisputed that appellant's photograph was the only one in the photospread in which the subject was wearing a striped shirt; the other subjects were wearing solid-colored shirts. (RR III 81, 112, 174; RR VIII – SX 116).

Regarding appellant's fifth claim, there is no evidence that the same person's photograph appears twice in appellant's photospread. The record reflects that appellant's attorney stated he thought the person depicted in positions three and six in the photospread were the same person. (RR III 111; RR IV 74). The attorney's statements, of course, do not constitute evidence. When defense counsel asked Sergeant Ashmore whether the two photographs were in fact of the same person, the officer replied he did not know. (RR III 111-112; RR IV 74-75). The record, therefore, does not affirmatively establish that the same person's photograph appears twice in the photospread.

3. Argument and analysis

<u>3.1. Applicable law</u>

A pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the defendant due process of law. *Barley v. State*, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995). A two-step analysis is used to determine the admissibility of an in-court identification: (1) whether the out-of-court identification procedure was impermissibly suggestive; and (2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Id.* at 33. An analysis under these steps requires an examination of the totality of the circumstances surrounding the particular case and a determination of the reliability of the identification. *Id.* This test is applicable to the admissibility determination of both in-court and out-of-court identifications. *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

Under the first prong, the identification procedures employed might be suggestive, but not *impermissibly* so. *Barley*, 906 S.W.2d at 33. Suggestiveness may be created by the manner in which the officer conducts the pretrial identification procedure or by the content of the photospread itself. *Id.*

Under the second prong, even assuming the identification procedure is impermissibly suggestive, it must be determined whether a very substantial likelihood for irreparable misidentification has been created. *Id.* at 34. Reliability

16

is the linchpin in determining admissibility of identification testimony. *Id.* If indicia of reliability outweigh suggestiveness, an identification is admissible. *Id.* To obtain a reversal, the defendant must show by clear and convincing evidence that the identification has been irreparably tainted. *Id.*

In determining whether a very substantial likelihood for irreparable misidentification has been created, the following nonexclusive factors are considered: (1) the witness's opportunity to view the criminal act; (2) the witness's degree of attention; (3) the accuracy of the suspect's description; (4) the level of certainty at the time of the confrontation; and (5) the time between the crime and the confrontation. *Id.* at 34-35. These factors are weighed against the corrupting effect of any suggestive identification procedure. *Id.* at 35.

In light of this guiding case law, it must be determined whether the five circumstances cited by appellant: (1) render the out-of-court identification procedure impermissibly suggestive; and (2) if it is impermissibly suggestive, whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Barley*, 906 S.W.2d at 33.

3.2. The identification procedure was not impermissibly suggestive

As mentioned, appellant first claims the identification procedure was impermissibly suggestive because Sergeant Ashmore did not employ a double blind process when he administered the photospread identification procedure.

17

However, while such a procedure may be preferable, failure to employ it does not make a pretrial identification procedure impermissibly suggestive per se. *Kelly v. State*, No. 14-13-00087-CR, 2014 WL 2446616, at *4 (Tex. App.--Houston [14th Dist.] May 29, 2014, no pet.) (not designated for publication); *Rodriguez v. State*, No. 07-11-00270-CR, 2013 WL 3355724, at *5 (Tex. App.--Amarillo June 26, 2013, no pet.) (not designated for publication); *see also United States v Watson*, 12-4012, 540 Fed. Appx. 512, 515, 2013 WL 5508874, at *3 (6th Cir. Oct. 4, 2013) (finding non-blind lineups are not inherently suggestive).

Furthermore, the defendant bears the burden of establishing by clear and convincing evidence that the procedure was impermissibly suggestive. *Mims v. State*, 434 S.W.3d 265, 272 (Tex. App.--Houston [1st Dist.] 2014, no pet.). While the double blind procedure is designed to prevent the *possibility* that an officer might knowingly or inadvertently send clues about the suspect's position in the photospread to an identification witness, appellant has not presented any evidence that such clues *actually* were sent in this case. There is no evidence that Sergeant Ashmore, despite the absence of a double-blind procedure, engaged in any conduct whatsoever that might have suggested to the complainant that he pick any particular person out of the photospread. As such, appellant has not carried his burden of proof with regard to his first claim.

Second, appellant claims the identification procedure was impermissibly suggestive because Sergeant Ashmore positioned himself so that he could see the photospread while the complainant viewed it. Appellant argues this positioning allowed the possibility that the officer inadvertently sent the complainant visual clues regarding the suspect's photograph.

Although the complainant testified at the suppression hearing that Sergeant Ashmore sat across a desk from him so that the officer could see the photospread (RR III 73-74, 79-80, 172), Sergeant Ashmore testified that he was behind the complainant while the complainant viewed the photospread where he would have been unable to see the photospread. (RR III 113-114). As such, the relevant testimony on this issue was conflicting.

A ruling on a suppression motion is reviewed on appeal in the light most favorable to the trial judge's determination. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014). And the trial judge is entitled to believe or disbelieve any part of any witness's testimony. *Baird*, 398 S.W.3d at 226.

Viewing the record in the light most favorable to the trial judge's ruling mandates an appellate determination that the trial judge found Sergeant Ashmore's account of his position credible. Given Sergeant Ashmore's description of his being positioned behind the complainant (and therefore out of the complainant's

sight), the office's position did not render the identification procedure impermissibly suggestive.

Moreover, even assuming Sergeant Ashmore actually did sit across from the complainant (thereby creating the possibility of him sending subconscious clues), appellant has not carried his burden of establishing by clear and convincing evidence that the procedure was impermissibly suggestive. *Mims*, 434 S.W.3d at 272. Specifically, there has been no showing that Sergeant Ashmore actually did send any clues to the complainant. Accordingly, regardless of the officer's position, there is no evidence of an impermissibly suggestive identification procedure.

Third, appellant claims the identification procedure was impermissibly suggestive because, after the complainant identified appellant in the photospread, Sergeant Ashmore told him he had picked the correct suspect. (RR III 79, 85, 101, 107-108, 114, 174-175; RR IV 42-43, 56-57, 79). The officer's confirmation to the complainant that he had correctly identified a suspect did not affect the admissibility of the pretrial identification because Sergeant Ashmore made the comment only after the complainant had already made the identification quickly and with great certainty. (RR III 80, 113, 178; RR IV 77-78). *Burkett v. State*, 127 S.W.3d 83, 87-88 (Tex. App.--Houston [1st Dist.] 2003, no pet.) (officer's confirmation of witness's identification was not impermissibly suggestive as to the

pretrial identification since the confirmation occurred after the pretrial identification).

It is possible, however, that Sergeant Ashmore's confirmation could influence the complainant's in-court identification. *Id*. at 88. The State will address this issue below when it examines the second prong of the applicable test, i.e., whether any impermissibly suggestive procedure was so suggestive that it gave rise to a very substantial likelihood of irreparable in-court misidentification. *Id*.

Fourth, appellant argues the content of the photospread was impermissibly suggestive because appellant was the only person in it who was wearing a striped shirt. (RR VII- SX 116). The other five subjects were wearing solid-colored shirts. This claim is meritless because photospread subjects need not be identical in appearance. *Burkett*, 127 S.W.3d at 87. Neither due process nor common sense require such exactitude. *Id*. As such, a photospread is not impermissibly suggestive simply because the defendant's shirt is different than the shirts worn by the other five men in the photospread. *Cienfuegos v. State*, 113 S.W.3d 481, 492 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd) (mere fact that defendant was only person in lineup wearing red shirt did not render it impermissibly suggestive); *Mungia v. State*, 911 S.W.2d 164, 168 (Tex. App.--Corpus Christi 1995, no pet.); *Walker v. State*, No. 13-11-00225-CR, 2011 WL 6916545, at *11 (Tex. App.--

Corpus Christi Dec. 29, 2011, no pet.) (not designated for publication) (photospread was not impermissibly suggestive even though defendant was only person who was not wearing a solid-colored shirt).

In this case, the six males in the photospread share very similar physical features and their shirts, while different, are not prominently displayed in the photographs. Accordingly, a subtle difference in appellant's shirt did not render the photospread impermissibly suggestive.

Fifth, appellant claims the photospread is impermissibly suggestive because the same person appears in the third and sixth position. (RR VII- SX 116). The record, however, does not support this allegation. Admittedly, the defense attorney stated he thought the person depicted in positions three and six in the photospread were the same person. (RR III 111; RR IV 74). The attorney's statements, however, do not constitute evidence. When defense counsel asked Sergeant Ashmore whether the two photographs were in fact of the same person, the officer replied he did not know. (RR III 111-112; RR IV 74-75). The record, therefore, does not affirmatively establish that the same person's photograph appears twice in the photospread. Absent evidence that the same person appears in the two photographs, appellant has not shown that the photospread was impermissibly suggestive. In any event, assuming the same person appears twice, appellant has

not cited any authority describing such a circumstance as impermissibly suggestive.

Therefore, only one of the five circumstances appellant cites as purportedly rendering the photospread impermissibly suggestive might actually render it as such, namely, Sergeant Ashmore's confirmation of the complainant's identification of appellant. At most, this confirmation potentially could affect only the complainant's in-court identification of appellant since the officer's confirmation occurred after the complainant had made his out-of-court identification. Accordingly, the second prong of the *Barley* test must be examined.

### 3.3. Any suggestive procedure did not give rise to a substantial likelihood of irreparable misidentification

The second prong of the *Barley* test asks whether the suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Barley*, 906 S.W.2d at 33. Five factors are considered in addressing this issue.

The first factor examines the witness's opportunity to view the defendant during the commission of the offense. *Id*. at 34. The circumstances of the robbery provided the complainant a good opportunity to see appellant commit the offense. Although the robbery occurred at night, the complainant recalled that the area in which he parked was well lit by light posts. (RR III 27-29, 158). When appellant approached the driver's side of the complainant's car, the complainant looked at appellant and could "clearly see his face." (RR III 36, 83, 133). The complainant

23

explained that appellant was close to him so that the complainant "had both [sic] angle of his face." (RR III 178). The complainant had an additional opportunity to see appellant when he approached the car a second time. (RR III 40-41, 144). The complainant's observations of appellant were detailed enough to allow him to notice that appellant's nose and lips stood out as features. (RR III 61, 86). There was no evidence of anything obstructing the complainant's view of appellant.

The record, therefore, demonstrates that the complainant had a very good opportunity to see appellant during the commission of the robbery. The complainant looked at appellant from a close distance in a well-lit area on two occasions with sufficient attention to discern details about his facial features. Accordingly, this first factor supports a determination that any suggestiveness in the identification procedure did not give rise to a very substantial likelihood of irreparable misidentification.

The second factor considers the witness's degree of attention. *Barley*, 906 S.W.2d at 34-35. The complainant testified that he looked at appellant during the robbery and clearly saw his face from a close distance. (RR III 36, 83, 178). He was attentive enough to appellant's appearance to recall distinctive features about appellant's face. (RR III 61-62, 86). The complainant confirmed that he would have been able to identify appellant in court as the gunman even if he had not viewed he photospread containing appellant's image, further demonstrating a high

degree of attention to appellant's appearance. (RR III 48-49, 62-63). Furthermore, as the victim, the complainant was more than just a casual observer of the crime. Therefore, he had more reason to be attentive. *Id.* at 35 (citing *Cantu v. State*, 738 S.W.2d 249 (Tex. Crim. App. 1987)) (a witness who is also a victim has a greater degree of attention than a casual bystander.) This factor, therefore, also militates in favor of the State.

The third factor examines the accuracy of the witness's description of the defendant. *Barley*, 906 S.W.2d at 35. On the night of the offense, the complainant told officers that the gunman was a "really young" Hispanic male who stood between five feet and three inches and five feet and six inches tall. (RR III 86, 144, 155, 195). Appellant, a juvenile, is a young male, and he appears to be Hispanic. (RR VIII – SX 116). At the time of trial, appellant was five feet and eight inches tall. (RR III 149). There was no evidence of appellant's height at the time of the offense nor indication of whether appellant, considering his youth, may have grown between the time of the offense and the trial. (RR III 181). Given the general nature of the complainant's description, this factor is only marginally compelling.

The fourth factor concerns the witness's level of certainty at the time of the confrontation. *Barley*, 906 S.W.2d at 35. The complainant immediately identified appellant in the photospread. (RR III 113). He was "very positive" of his

identification of appellant. (RR III 80). The complainant was "really sure it was him." (RR III 178). The complainant never wavered from this identification and identified appellant as the gunman in court. (RR III 48). He confirmed that he could have recognized appellant in court even if he had not previously seen appellant in the photospread. (RR III 48-49). Since the complainant identified appellant with a very high level of certainty, this factor favors the State.

The final factor considers the time between the crime and the confrontation. *Barley*, 906 S.W.2d at 35. Only one day passed between the robbery and the complainant's identification of appellant in the photospread. (RR III 23; RR VIII – SX 116). And the in-court identification occurred about nine months after the offense. (RR III 1, 23). A nine-month passage does not have a detrimental effect on an identification. *Brown v. State*, 64 S.W.3d 94, 101 (Tex. App.--Austin 2001, no pet.) (eight months). As such, this factor also favors the State.

In addition to these five factors, the complainant confirmed that he would have been able to identify appellant as the gunman in court even if he had not viewed the photospread containing appellant's picture. (RR III 48-49, 62-63). When an in-court identification is based upon knowledge independent from an allegedly improper pretrial procedure, it is admissible. *Rojas v. State*, 171 S.W.3d 442, 449 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd).

Considering all of these circumstances, the complainant's in-court identification of appellant was reliable. Therefore, even if the pretrial identification procedure was impermissibly suggestive, there was not a substantial likelihood for irreparable misidentification. As such, the trial judge did not err in denying appellant's motion to suppress the complainant's identifications of him.

Points of error two and three are meritless and should be overruled.

## REPLY TO POINT OF ERROR FOUR

In his fourth point of error, appellant contends the trial judge erred in denying his motion for a continuance. (RR II 4-8; CR 32-33). Appellant claims he was entitled to a continuance to allow a missing witness to testify at his trial.

Relevant facts

On the first day of trial, before the voir dire proceeding began, defense counsel presented a written motion for continuance to the judge. (RR II 4; CR 32-33). He explained that the State had issued a subpoena for Ms. Funk, but both the State and appellant decided they did not require her testimony so she was excused from testifying. (RR II 4; CR 32). However, on the Friday evening before this trial began on a Monday, defense counsel obtained an offense report relating to an extraneous incident that occurred about 2.5 hours after the charged robbery. (RR II 4-5).

27

Based on this development, defense counsel contacted Funk over the weekend and "emailed her a document [], she viewed it, and based on her information, we felt she became a necessary witness for the defense." (RR II 5). Funk, who lives in Austin, informed defense counsel that she was not available to testify on the scheduled trial date. (RR II 5). Defense counsel indicated that Funk would be available at some unspecified time in the future. (RR II 5; CR 32).

Defense counsel did not specify the anticipated content of Funk's testimony, but the record indicates he texted her an unidentified photospread on the Sunday before trial. (RR II 5-8). Based on discussions at the hearing on the continuance motion, it appears as though there was a "lack of identification" or "non-identification" of appellant by Funk with regard to an extraneous offense that involved three people, including appellant's two accomplices, about 2.5 hours after the robbery. (RR II 6-7). At the conclusion of this hearing, the trial judge denied appellant's motion for a continuance. (RR II 8).

Argument and analysis

In a juvenile case, the denial of a motion for continuance is examined under the Texas Rules of Civil Procedure and civil case law. TEX. FAM. CODE ANN. § 51.17(a) (West 2014) (with few inapplicable exceptions, the Texas Rules of Civil Procedure govern juvenile proceedings); *In re J.H.C.*, No. 08-02-00244-CV, 2003 WL 1948985, at *2 (Tex. App.--El Paso Apr. 24, 2003, no writ) (not designated for

publication) (expressly holding that civil law applies in review of denial of continuance in juvenile case) (citing *In re D.B*, 594 S.W.2d 207, 212 (Tex. App.-- Corpus Christi 1980, no writ) (applying civil case law in reviewing denial of juvenile's continuance motion)); *In re I.P.*, No. 04-98-00588-CV, 1999 WL 191589, at *1 (Tex. App.--San Antonio Apr. 7, 1999, no writ) (not designated for publication) (applying civil rules to review denial of juvenile's continuance motion). A denial of a motion for continuance is reviewed for an abuse of discretion. *Grace v. Duke*, 54 S.W.3d 338, 343 (Tex. App.--Austin 2001, pet. denied).

Continuances should be granted only for sufficient cause supported by affidavit, consent of the parties, or by operation of law. TEX. R. CIV. P. 251. When a defendant seeks a continuance for want of testimony, the motion must be supported by an affidavit stating that such testimony is material, showing the materiality thereof, and that he has used due diligence to procure such testimony, stating such diligence, and the cause of failure if known; and, if it be for the absence of a witness, he shall state the name and residence of the witness, and what he expects to prove by the witness. TEX. R. CIV. P. 252.

Appellant failed to support his continuance motion with the required affidavit in violation of Rules 251 and 252. (CR 32-33). A trial court does not abuse its discretion when it denies a continuance motion submitted in violation of

the affidavit requirement. *Grace*, 54 S.W.3d at 343; *J.H.C.*, 2003 WL 1948985, at *2. Since appellant failed to support his motion with the requisite affidavit, the trial judge did not abuse his discretion by denying it. *J.H.C.*, 2003 WL 1948985, at *2. As such, his fourth point of error is meritless and should be overruled.

Furthermore, even assuming that the criminal rules of procedure apply to this issue, appellant's complaint would remain meritless. The Texas Code of Criminal Procedure provides that all motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance. TEX. CODE CRIM. PROC. ANN. art. 29.08 (West 2006). An unsworn motion preserves noting for review. *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999). Appellant's continuance motion is unsworn. (CR 32-33). Therefore, even under criminal law standards, appellant presents nothing for review. *Id*.

Nevertheless, despite the lack of preservation, appellant argues the denial of his continuance motion denied him due process. However, there is no due process exception to the rule requiring motions for continuance to be written and sworn to in order to be preserved on appeal. *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012). Further, appellant failed to raise a due process argument in the trial court, thereby waiving such a claim. (RR II 4-9; CR 32-33). *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (failure to object waived due process claim).

Additionally, appellant waived any error because, in addition to being unsworn, appellant's written continuance motion lacks some statutorily-required content, including an explanation of "[t]he facts which are expected to be proved by the witness." (CR 32-33). TEX. CODE CRIM. PROC. ANN. art. 29.06 (West 2006) (listing required content of defendant's first continuance motion). Accordingly, for these various reasons, appellant failed to preserve his complaint for appellate review, whether the civil or criminal standard is employed.

Moreover, even if appellant had preserved his complaint for review, it would be meritless since the trial judge did not err in denying his motion for continuance. Under both the civil and criminal standards, a defendant must show the materiality of the missing witness's potential testimony. *Harrison v. State*, 187 S.W.3d 429, 434 (Tex. Crim. App. 2005); *Rocha v. Faltys*, 69 S.W.3d 315, 319 (Tex. App.--Austin 2002, no pet.). The motion for continuance must show on its face the materiality of the absent testimony. *Harrison*, 187 S.W.3d at 434. Mere conclusions and general averments are not sufficient for the court to determination the issue of materiality. *Id.*

Appellant's written continuance motion does not identify the subject of Funk's anticipated testimony whatsoever; nor does it allege that her testimony would be material in any way. (CR 32-33). And the comments made at the hearing on the motion add only vague detail to the matter. Defense counsel simply

31

established that he texted Funk a photospread that she viewed on an iPhone. (RR II 5, 8). While defense counsel failed to explain Funk's response after viewing the photospread, he seemed to indicate that Funk might say that she saw "an intervening person with" appellant's two codefendants about 2.5 hours after the robbery. (RR II 6-7). The prosecutor's comments indicate that Funk made no identification from the photospread. (RR II 6).

The record in this matter is too vague and ambiguous to establish the materiality of Funk's anticipated testimony. Evidently, appellant believed Funk's testimony would be relevant because it might establish that Funk saw appellant's two accomplices with a third person several hours after the robbery and, based on Funk's "non-identification" regarding the photospread, that third person was not appellant. (RR II 6).

However, the record does not even establish that appellant's picture was in the photospread viewed by Funk, thereby failing to attach any significance to her non-identification. And even if appellant did appear in the photospread, there is no evidence that Funk's inability to identify him was consistent with appellant not being the third person present. Perhaps Funk did not see the third person very well at the time of the encounter, which resulted in her inability to subsequently identify anyone. Or maybe Funk may not have been able to view the photospread well enough on the iPhone screen to make an accurate identification. In any event, the

appellate record is not sufficiently developed on this issue to demonstrate the materiality of Funk's anticipated testimony. In fact, the trial testimony from Sergeant Ashmore establishes that Funk actually did identify a photograph of appellant as the third person present at her encounter with the trio. (RR IV 129-130).

Furthermore, even assuming Funk's testimony would have indicated that appellant was not with his two accomplices 2.5 hours after the robbery, such a fact is hardly exculpatory or compelling since it is not uncommon for people to separate at some point following a group activity. Appellant's absence from the group at a later time provided little, if any, probative evidence of whether he participated in the charged robbery. As such, regardless of the precise content of Funk's testimony, it would not have been material. Therefore, the trial judge did not abuse his discretion in denying appellant's motion for continuance.

Point of error four is meritless and should be overruled.

## CONCLUSION

It is respectfully submitted that all things are regular and the conviction should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 13489950
mccrory_daniel@dao.hctx.net

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been sent to the

following email addresses via TexFile:

Cheri Duncan
Amalia Beckner
Assistant Public Defenders
Cheri.duncan@pdo.hctx.net
Amalia.beckner@pdo.hctx.net

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 13489950

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 7,461 words, based upon the representation provided by the word processing program that was used to create the document.

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 13489950

Date: 10/21/2015