**Artenus FISHER, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14-16-00108-CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed May 11, 2017

Discretionary Review Refused August 23, 2017

---

Keisha L. Smith, Houston, TX, for Appellant.

Clinton Morgan, Houston, TX, for State.

Panel consists of Justices Christopher, Jamison, and Donovan.

## OPINION

Martha Hill Jamison, Justice

Appellant Artenus Fisher appeals his conviction for aggravated robbery. In a single issue, appellant contends that the trial court erred in denying his motion to suppress complainant's pretrial identification of him due to an impermissibly suggestive photographic lineup. We affirm.

### *Background*

Complainant Sabrina Herron testified that appellant robbed her at gunpoint just outside her apartment on April 13, 2015. Herron stated that as she was starting up the stairs to her apartment, she felt someone pull her backwards by her ponytail. She turned and was able to "get a good look" at appellant. He told her to "shut up" and struck her across her left cheek with a gun. Appellant then pointed the gun at Herron, demanded she give him her car keys, and hit her again. Herron gave him the keys, which were to her boyfriend Kenneth Ladson's car, and appellant also took Herron's cell phone from her hand. Appellant then ran towards the parking lot and drove away in Ladson's car. Although there was testimony that the apartment complex was poorly lit, Herron was able to identify her assailant as a "[b]lack male, around 6-foot tall, 160 to 170 pounds, wearing a red hoodie and dark pants."

Herron further testified that after appellant fled, she ran to her apartment and told Ladson what had happened. Ladson first called the police and then called the car dealership where he had bought the vehicle. Using a tracking device in the stolen car, the dealership located the vehicle, and the police thereafter initiated a high-speed chase. The chase ended when appellant, who was driving the car, crashed into another car and attempted to escape on foot, only to be quickly apprehended by the police. When they searched a backpack appellant was wearing at the time, police officers discovered a red hoodie.

On April 14, 2015, Houston Police Investigator Fred Braune composed an array of six photographs, including one of appellant wearing a red hoodie. The other five photographs were also of black males of similar age, skin tone, facial features, and hairstyles as appellant. In two of the other photographs, the subject is wearing a red shirt or jacket. In one of those photographs, it looks like the red shirt or jacket could be hooded. In the other red-shirt photograph, the subject is wearing a gray hooded jacket over the red shirt.

Prior to trial, appellant objected to the admission of Herron's pretrial identification because it was tainted by an impermissibly suggestive photographic lineup.

At a hearing on the motion, Herron testified that she was shown the photo array the next morning, about five to six hours after the robbery. She stated that she was "[a] hundred percent" sure that the person she identified in the photographs was the robber and she was sure of it at the time she was shown the array. At one point, during cross-examination by defense counsel, Herron seemed to agree that her "best memory" of appellant was his red hoodie, but she later clarified on re-direct that "his face was the main thing. I remember also the hoodie." She further stated, "I remember his face. . . . [I]t was kind of dark; but I got a direct look at him when I turned around . . .," and "I picked the person because I remembered him, well, his face." And she expressly denied that she picked him because of what he was wearing. When asked what drew her attention to his photograph, she replied "[h]is face." Officer Matthew Green also testified at the hearing. He explained that after Investigator Braune prepared the array, he (Green) presented it to Herron without knowing which photograph was of the actual suspect in the case.

The trial court denied appellant's motion to suppress. At trial, Herron gave substantially similar testimony regarding the photo array as she did in the pretrial hearing. She also affirmatively identified appellant in court as the robber. Green also provided testimony at trial similar to his pretrial testimony.

The jury found appellant guilty of aggravated robbery and also found an allegation in an enhancement paragraph to be true. The jury then assessed appellant's punishment at 28 years in prison.

### Analysis

██ A pretrial identification procedure may be so suggestive and conducive to mistaken identification that using the identification at trial would deny the accused due process of law. *Conner v. State*, 67 S.W.3d 192, 200 (Tex. Crim. App. 2001); *Mendoza v. State*, 443 S.W.3d 360, 363 (Tex. App.—Houston [14th Dist.] 2014, no pet.). When determining the admissibility of a pretrial identification, we apply a two-step analysis; first asking whether the pretrial procedure was impermissibly suggestive, and then, if so, whether the suggestive pretrial procedure gave rise to a very substantial likelihood of irreparable misidentification. *E.g.*, *Aviles-Barroso v. State*, 477 S.W.3d 363, 381 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). The analysis under these steps requires an examination of the totality of the circumstances surrounding the particular case. *Conner*, 67 S.W.3d at 200. We review de novo whether an identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification, but we review historical issues of fact in the light most favorable to the trial court's ruling. *Loserth v. State*, 963 S.W.2d 770, 773–74 (Tex. Crim. App. 1998).

██ In the first step in the analysis, it is the defendant's burden to establish by clear and convincing evidence that the pretrial procedure was impermissibly suggestive. *Balderas v. State*, No. AP-77, 517 S.W.3d 756, 791–92, 2016 WL 6496715, at *25 (Tex. Crim. App. Nov. 2, 2016), *cert. denied*, —— U.S. ——, 137 S.Ct. 1207, 197 L.Ed.2d 251 (2017). Suggestiveness may result from the manner in which a pre-trial identification procedure is conducted; the content of the line-up or photo array itself, as when the suspect is the only individual closely resembling the pre-procedure description; or the cumulative effect of the procedures and photographs used. *See Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995). Every photo array must generally contain photographs of individuals who roughly fit the description of the

suspect. *Buxton v. State*, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985). However, neither due process nor common sense requires exactitude. *Id.*

Appellant argues that because his photograph was the only one in the lineup plainly featuring a red-hooded sweatshirt, which matches the description of clothing provided by Herron, the procedure was impermissibly suggestive. As mentioned above, aside from clothing, all the photos in the lineup appeared similar in terms of the subjects' ages, skin tones, facial features, and hairstyles. Additionally, two others in the lineup were wearing red clothing items, with one individual wearing a red shirt that appears to be hooded and another wearing a gray hooded jacket over a red shirt.

Appellant does not cite any authority supporting his position that the article of clothing he was wearing in his photograph rendered the lineup impermissibly suggestive. Indeed, the clear weight of Texas authority is to the contrary. *See, e.g., Robinson v. State*, No. 05-10-01022-CR, 2012 WL 130616, at *2 (Tex. App.—Dallas Jan. 18, 2012, pet. stricken) (mem. op., not designated for publication) (concluding photographic lineup was not impermissibly suggestive when it depicted defendant wearing blue, collared shirt similar to description of suspect); *Hopkins v. State*, No. 14-07-00531-CR, 2009 WL 508379, at *4 (Tex. App.—Houston [14th Dist.] Mar. 3, 2009, pet. ref'd) (mem. op., not designated for publication) (concluding photo array was not impermissibly suggestive when it depicted defendant in a white muscle shirt similar to suspect's description); *Hudson v. State*, No. 14-07-00888-CR, 2009 WL 196060, at *5 (Tex. App.—Houston [14th Dist.] Jan. 29, 2009, pet. ref'd) (mem. op., not designated for publication) ("The fact that appellant is wearing apparel similar to the grey, hooded sweat-

shirts worn by the robbers is not necessarily impermissibly suggestive."); *Smith v. State*, 930 S.W.2d 227, 228–29 (Tex. App.—Beaumont 1996, pet. ref'd) (concluding photo array was not impermissibly suggestive when defendant was the only individual pictured wearing red-hooded sweatshirt similar to the red jacket victims testified robber was wearing); *Mungia v. State*, 911 S.W.2d 164, 168 (Tex. App.—Corpus Christi 1995, no pet.) (holding lineup was not impermissibly suggestive when defendant was only person pictured wearing dark shirt and robber was described as wearing black shirt). In light of the established case law, we conclude that appellant has failed to produce clear and convincing evidence that the pre-trial identification procedure was impermissibly suggestive. *See Loserth*, 963 S.W.2d at 772-73.

Additionally, even if we agreed that the lineup was impermissibly suggestive, under the totality of the circumstances, the procedures used did not give rise to a very substantial likelihood of irreparable misidentification. *See Aviles-Barroso*, 477 S.W.3d at 381. Under this second step in the analysis, we assess the reliability of the identification by weighing five non-exclusive factors against the corrupting effect of any suggestive identification procedure: (1) the opportunity of the witness to view the suspect at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *See Balderas*, 517 S.W.3d at 791–92, 2016 WL 6496715, at *25.

Regarding the first factor, although Herron acknowledged the lighting at the scene of the robbery was not good, she insisted that she got a "direct" look at appellant's face while he was standing

about arm's length from her. Regarding the second factor, as the victim of a robbery at close range, Herron was likely very attentive to appellant's features. *See Glass v. State*, No. 14-12-00172-CR, 2012 WL 6632116, at *5 (Tex. App.—Houston [14th Dist.] Dec. 20, 2012, pet. ref'd) (mem. op., not designated for publication); *Smith*, 930 S.W.2d at 229. Herron stated that she had described her assailant to police as a little bit taller than her and skinny, but no evidence was presented regarding the third factor, accuracy of that description. As to the fourth factor of certainty, Herron testified that she was 100 percent sure she identified her assailant in the photo array and she was sure of it at the time she made the identification. She further stated that she chose appellant's photo because she remembered his face and denied that she picked him because of the clothes he was wearing. Finally, Herron stated that she was shown the lineup the next morning, about five to six hours after the robbery, which is a particularly brief delay between crime and identification. *See, e.g., Smith*, 930 S.W.2d at 229 (noting "[t]he time between the crime and confrontation was only a few days").

Based on these five factors, the reliability of Herron's identification weighed against any suggestiveness of the photo array, and we conclude that no substantial risk of irreparable misidentification was created so as to deny appellant due process. *See Conner*, 67 S.W.3d at 200. Accordingly, we overrule appellant's sole issue and affirm the trial court's judgment.